**EDMONTON WORLD HOCKEY ENTERPRISES, LTD., et al., Plaintiffs,**

v.

**Charles L. ABRAHAMS, Defendant.**

**NATIONAL HOCKEY LEAGUE, Plaintiff,**

v.

**Charles L. ABRAHAMS, Defendant.**

**Civ. Nos. 4–86–728, 4–87–22.**

United States District Court, D. Minnesota, Fourth Division.

April 8, 1987.

Richard A. Lockridge, Opperman & Paquin, Minneapolis, Minn., for plaintiffs Edmonton World Hockey Enterprises, Ltd., et al.

Gary J. Haugen, Maslon Edelman Borman & Brand, Minneapolis, Minn., for plaintiff Nat. Hockey League.

David C. Doyle, MacDonald, Halsted & Laybourne, San Diego, Cal.; and Garrett Mulrooney, Maun, Green, Hayes, Simon, Johanneson and Brehl, St. Paul, Minn., for defendant Charles L. Abrahams.

DIANA E. MURPHY, District Judge.

Plaintiffs brought these actions against attorney Charles L. Abrahams asserting claims arising from his alleged breach of a settlement agreement between plaintiffs and clients of Abrahams in a previous action. In Civ. No. 4–86–728, plaintiffs are four corporations that operate National Hockey League teams which were formerly in the World Hockey Association. The National Hockey League, a Delaware corporation, is plaintiff in Civ. No. 4–87–22. Plaintiffs in both actions request damages and allege diversity jurisdiction. Now before the court is defendant's motion to dismiss for lack of personal jurisdiction and improper venue in each action.

## BACKGROUND

This action arises from a previous action in this district. On May 17, 1982, Charles L. Abrahams filed a suit in the District of Minnesota on behalf of 28 former players and staff personnel of teams in the former World Hockey Association against a large number of defendants, including the plaintiffs in this action. *Adduono v. World Hockey Association*, Civ. No. 3–82–586 (D.Minn.). After several years of litigation, the case was settled and the Honorable Donald D. Alsop dismissed the action with prejudice on December 14, 1984.

Paragraph 6 of the settlement agreement provided that:

> Each of the undersigned counsel for the Plaintiffs hereby represent that they are not presently retained to represent, have not been requested to represent, and have not offered to represent, either as counsel, agents, or in any other capacity any other individual, corporation, partnership or other legal entity for the purpose of pursuing any claim of any kind, either asserted or unasserted, against the National Hockey League or any of its Member Clubs, or against the WHA or any of its former Member Clubs....

In addition, Paragraph 7 stated:

> [P]aragraph 1 [the provision reciting payments to be made] is based and conditioned upon ... (b) the representations made by Plaintiffs' counsel in paragraph 6.

Along with all other counsel, defendant Abrahams signed the agreement.

Prior to the dismissal of the action in December 1984, Abrahams had entered into a consulting agreement with the law firm of Kolodny & Katkov and sent letters on October 19, 1984 to 154 individuals urging them to retain this law firm in an action

against many of the same defendants and asserting virtually identical claims. That action, *Chernoff v. National Hockey League*, was filed in the Southern District of California by the Kolodny law firm, and was eventually dismissed against all defendants.

After the defendants in *Adduono* learned about these events, several of them moved on August 7, 1985 to reopen the *Adduono* case and to have Abrahams' share of the settlement proceeds placed in an escrow account. In an order dated October 24, 1985, Chief Judge Alsop found that Abrahams' action with respect to the *Chernoff* litigation was a violation of Paragraph 6 of the settlement agreement in *Adduono* and constituted a misrepresentation of facts then known to Abrahams. The court ordered Abrahams' share of the settlement proceeds to be placed in an escrow account.

Defendants in *Adduono* subsequently moved for various other types of relief with respect to ·Abrahams, including the imposition of sanctions. In an order dated February 4, 1986, Judge Alsop imposed a fine of $5000 on Abrahams pursuant to Fed.R.Civ.P. 11, but declined to order Abrahams to return all fees he derived from the settlement payments, which were released from escrow by the order, and declined to require Abrahams to indemnify the other parties for their litigation expenses in defending the *Chernoff* action. Judge Alsop recognized that defendants in *Adduono* (plaintiffs here) "may have cognizable breach of contract and misrepresentation claims arising out of Abrahams' conduct in this case," but declined to reach the merits of those claims.

Plaintiffs in the two actions before this court now bring claims similar to those raised before Chief Judge Alsop. Plaintiff hockey clubs in Civ. No. 4–86–728 allege breach of the settlement agreement, false misrepresentation, and unjust enrichment. In Civ. No. 4–87–22, plaintiff National Hockey League asserts the same three counts against Abrahams; it also requests treble damages pursuant to Minn.Stat. §§ 481.07 and 481.071 for acting with in-

tent to deceive and in a collusive manner. Plaintiffs request damages related to their expenses in defending the *Chernoff* litigation and their payments to the clients of Abrahams under the settlement agreement in *Adduono*.

## DISCUSSION

### A. *Personal Jurisdiction*

Defendant alleges that his actions do not subject him to jurisdiction in Minnesota under the Minnesota long-arm statute. Under Minn.Stat. § 543.19(1)(b), a court may exercise personal jurisdiction over a non-resident defendant in the same manner as over residents if the defendant "[t]ransacts any business within the state." This jurisdiction extends only to causes of action "arising from" defendant's transaction of business. Minn.Stat. § 543.19(3). Minnesota interprets the statute to "assert in personam jurisdiction over nonresidents to the maximum extent consistent with due process...." *Marquette National Bank v. Norris*, 270 N.W.2d 290, 294 (Minn.1978). Accordingly, the court examines the question of jurisdiction in the due process context.

The " 'constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established "minimum contacts" in the forum State.' " *Asahi Metal Industry Co. v. Superior Court*, —— U.S. ——, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945))). "[A] 'relationship among the defendant, the forum, and the litigation' is the essential foundation of *in personam* jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (footnote omitted) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). Where the cause of action arises from or relates to the party's activities in the forum state, the " 'fair warning' requirement" of the due process

clause is satisfied. *Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. at 2182.

Defendant Abrahams argues that he has not transacted business in Minnesota and that the assertion of jurisdiction over him would violate due process. He notes that he is not licensed to practice in Minnesota and that the *Adduono* case is his sole contact with the state. In addition, he argues that he executed the settlement agreement in California and that the actions alleged in the complaint—his consulting agreement, his sending of the letters, and the filing of the *Chernoff* action—all occurred in California. Plaintiffs' alleged injury in defending the *Chernoff* action, according to defendant, also occurred in California. Although defendant filed pleadings and made court appearances in Minnesota, he argues that these activities do not constitute "transacting business" within the meaning of the Minnesota long-arm statute because he was acting on behalf of another as an agent. And even if he were to be found to have transacted business in Minnesota, defendant argues that the cause of action does not arise from his acts in the state, but rather from his acts in California.

Plaintiffs respond that defendant has had extensive business dealings with Minnesota hockey teams since 1974. To plaintiffs, these facts, along with his choice of Minnesota as forum in the *Adduono* case, indicate that defendant has purposefully availed himself of the benefits of doing business in Minnesota. Because they believe that defendant made purposeful contacts with Minnesota that are closely related to the cause of action here, plaintiffs contend that jurisdiction may be asserted over him in a manner consistent with due process.

■ In order to determine whether jurisdiction may be constitutionally asserted over defendant, the contract and tort claims should be examined separately. In cases involving an alleged breach of contract, a court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp.,* 471 U.S. at 479, 105 S.Ct. at 2186. Here, defendant attended several settlement conferences in Minnesota, which eventually led to the settlement agreement that has allegedly been breached. The record is not clear as to whether the subject matter of Paragraph 6 of the agreement was discussed at the conferences attended by defendant. In ruling on a motion to dismiss for lack of personal jurisdiction, however, the court must view the facts "in the light most favorable to the party opposing the motion." *Aaron Ferer & Sons Co. v. Diversified Metals Corp.,* 564 F.2d 1211, 1215 (8th Cir.1977). Viewing the facts from this perspective, the court finds that the clause prohibiting counsel from bringing similar actions may well have been negotiated, at least in part, in Minnesota. The future consequences of the agreement, most notably the dismissal of the action itself, also were to occur in Minnesota. These factors indicate that defendant purposefully established minimum contacts in Minnesota and that the contract claim arises from those contacts.[1]

■ Plaintiff's cause of action for fraud also relates to defendant's contacts. Although defendant signed the settlement agreement in California, his signature page was forwarded to Minneapolis where the closing of the settlement agreement was held. *See Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. at 2184 ("Jurisdiction ... may not be avoided merely because the defendant did not *physically* enter the forum State.") (emphasis in original). His signature constituted a representation that he was "not presently retained to represent ... as counsel, agen[t], or in any other capacity" any party in an action against the defendants in *Adduono.* Chief Judge Al-

---

1. Although a "choice of law" provision in a contract cannot itself convey jurisdiction over a contracting party, such a provision can be considered insofar as it "reinforce[s defendant's] deliberate affiliation with the forum State and the reasonable forseeability of possible litiga-tion there." *Burger King Corp.,* 471 U.S. at 482, 105 S.Ct. at 2187. Here, the settlement agreement provided that it was to be governed by Minnesota law. Paragraph 12. This fact also suggests that jurisdiction may constitutionally be asserted over defendant.

sop found this action to be a misrepresentation of facts then known to Abrahams in view of his consulting agreement signed two months earlier. By sending his signature page to Minnesota, the forum in which he originally chose to file suit, defendant established another contract with Minnesota, and one from which the fraud cause of action arises.

■ Defendant makes several other arguments against the exercise of personal jurisdiction in Minnesota. He states that Minnesota has little interest in providing a forum for an action brought by citizens of other states. The "purposeful availment" requirement, however, is satisfied "where the defendant 'deliberately' has engaged in significant activities within a State *or* has created 'continuing obligations' between himself and residents of the forum." *Burger King Corp.*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84 (emphasis added) (citations omitted). Here, defendant deliberately engaged in significant activities in Minnesota and thus purposefully availed himself of the privilege of conducting such activities in the state. Exercise of jurisdiction is permissible even though the plaintiffs are not Minnesota residents.

■ Defendant's argument that he cannot be subjected to jurisdiction in Minnesota because he acted only as an agent for his clients is also unpersuasive. Had defendant acted solely in his capacity as an agent, his argument might have some force. *See First National Bank v. White*, 420 F.Supp. 1331, 1336 (D.Minn.1976). Here, however, Paragraph 6 constituted a representation only by "undersigned counsel" and imposed no duties on the clients of counsel. Defendant made this representation in his individual capacity rather than as an agent for a principal. In addition, where an agent commits a tort, he is individually liable and the contact may be considered in finding personal jurisdiction over him. *Washington Scientific Industries, Inc. v. American Safeguard Corp.*, 308 F.Supp. 736, 739 (D.Minn.1970). Here, plaintiffs allege that defendant committed the tort of knowing misrepresentation. Defendant's contacts with Minnesota related to that alleged tort are sufficient for the assertion of jurisdiction over him.

For all of the above reasons, the court determines that jurisdiction may be constitutionally asserted over defendant and that his motion to dismiss on this basis should therefore be denied.

### B. *Venue*

■ Defendant also argues that venue is improper in Minnesota under 28 U.S.C. § 1391(a), which provides that diversity actions may be brought "only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." According to defendant, the parties do not reside in Minnesota and the claim arose from events that occurred in California rather than in Minnesota.

Plaintiffs respond that their choice of forum is entitled to deference and that the cause of action arose in Minnesota. Because the purpose of the settlement agreement was to settle litigation in Minnesota, they argue that the place of performance, and thus the place where the cause of action arises, was Minnesota. Finally, they argue that Minnesota is a proper forum because defendant chose to litigate the *Adduono* case in the state and because many of the events giving rise to the claim occurred in the state.

In interpreting the phrase "in which the claim arose," the Court of Appeals has considered both where "a substantial part of the events or omissions giving rise to the claim occurred" and the intended place of contractual performance. *See Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir.1973); *Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 261 (8th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). Here, a substantial part of the events giving rise to the claims occurred in this district. The causes of action thus arose in Minnesota and venue is therefore proper.[2]

**2.** In these cases so related to professional hockey, the court might be remiss not to note the

Accordingly, based on the above and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that defendant's motion to dismiss for lack of personal jurisdiction and for improper venue is denied.

case of *In re Nine Mile Ltd.,* 692 F.2d 56, 61 (8th Cir.1982) ("Courts are in the business of deciding cases, not playing procedural hockey among available districts at the whim of dissatisfied parties.").