**MEDICAL ASSURANCE COMPANY OF MISSISSIPPI, Plaintiff,**

v.

**K. Stephen JACKSON and Charles Edward Moore, Defendants.**

Civ. A. No. 3:94–CV–125(L)(N).

United States District Court, S.D. Mississippi, Jackson Division.

May 24, 1994.

---

6. The Court must, of course, leave the business of legislating to the Louisiana legislature.

Carl R. Montgomery, Montgomery, Smith–Vaniz & McGraw, Canton, MS, Rebecca B. Cowan, Montgomery, Smith–Vaniz & McGraw, Jackson, MS, for plaintiff.

James P. Streetman, III, Clark, Scott & Streetman, Jackson, MS, Charles A. McCallum, Haskell, Slaughter, Young & Johnston, Birmingham, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants K. Stephen Jackson and Charles Edward Moore to dismiss or, in the alternative, to transfer venue. Plaintiff Medical Assurance Company of Mississippi (MACM) has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendants' motion should be denied.

This cause of action involves defendants' alleged breach of a settlement agreement entered with MACM. As its name implies, plaintiff is a Mississippi insurance company which provides malpractice insurance to physicians. Among its insureds is Dr. George Garami, a Mississippi practitioner. In 1992, defendant Moore, an Alabama resident, underwent ulcer surgery at the South Sunflower County Hospital in Mississippi. The operation was performed by Dr. Garami. A sponge count at the completion of the operation revealed that one sponge was unaccounted for. According to defendants, an x-ray of plaintiff's abdomen was read by Dr. Luciano, a radiologist who had been consulted in the case, but that x-ray was found by Dr. Luciano to be negative and the whereabouts of the sponge remained undetermined. Moore was released from the hospital five days later. Subsequently, it was determined that the missing sponge had been left in Moore's abdomen,[1] and additional surgery was required to have it removed.

Plaintiff retained an Alabama attorney, defendant Jackson, to represent him on claims against Drs. Garami and Luciano for medical malpractice. By letter dated July 22, 1993 and transmitted via facsimile and United States mail to MACM's assistant general manager, Charles Dunn III, Jackson demanded $1,100,000 to settle the claim and advised that he would be compelled to proceed with litigation if the matter was not quickly resolved. Jackson's initial letter was followed by a series of letters and telephone calls between Jackson and Dunn which are alleged by MACM to have culminated in Moore's having agreed to accept a settlement of $56,250 in exchange for his execution of an absolute release. However, whereas Moore and Jackson accepted and negotiated the $56,250 check tendered by MACM in payment of that settlement, they refused to execute the absolute release as tendered by MACM and ultimately submitted to MACM an altered release, from which certain of the

1. After Moore returned to his home in Alabama, he developed severe complications, and it was determined that the sponge had been left in his abdomen.

**578**

provisions required by MACM had been marked out. MACM brought the present action alleging breach of the settlement agreement and seeking enforcement of the alleged agreement.[2]

■ Defendants have moved to dismiss the case on the basis that this court lacks personal jurisdiction over them. Under Mississippi's long-arm statute, a Mississippi court may properly exercise jurisdiction over a nonresident who has entered a contract with a Mississippi resident to be performed in whole or in part in Mississippi, so long as the exercise of jurisdiction also comports with the constitutional requirements of due process. Miss.Code.Ann. § 13–3–57.[3] Jackson and Moore insist that no part of any alleged contract was to be performed in Mississippi since the settlement money was paid to them *in Alabama* and their execution—and alteration—of the release was expected to and did occur *in Alabama.* However, these defendants have an unjustifiably narrow and unfounded view of what performance of a contract entails. They negotiated with a Mississippi insurance company and, it is alleged, ultimately entered a settlement agreement which required that they execute an absolute release in consideration of MACM's payment of $56,250. It is true, as defendants observe, that they received and cashed the check in Alabama and executed—as well as altered—the release document in Alabama. However, the check was sent from Mississippi and was ultimately paid by a Mississippi bank. Further, the release, which is central to this action, was sent to defendants from MACM in Mississippi and was to be returned to MACM in Mississippi. And defendants did, in fact, return a release

document to MACM in Mississippi. In light of these facts, defendants' contention that no part of the alleged contract was to be performed in Mississippi is hardly reasonable.

■ Even where the requirements of state law are met, a court still may not exercise in personam jurisdiction over a nonresident if that exercise of jurisdiction does not comport with due process. Thus, jurisdiction may be asserted only where the nonresident has such "minimum contacts" with the forum state that his being required to defend suit in the forum would not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This means that the nonresident must have done some act or acts which make it reasonable for him to expect to be brought to suit in the forum. Thus, the focus of the due process inquiry is on whether the nonresident, by virtue of his contact(s) with the forum state, can be said to have "purposely availed himself of the benefits and protections of" the forum's laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The Fifth Circuit has recently explained that the "minimum contacts" inquiry has been "refined to determine two types of personal jurisdiction—specific and general." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 419 (5th Cir.1993).

A state exercises "specific jurisdiction" over a nonresident defendant when the lawsuit arises from or relates to the defendant's contact with the forum state. A single act by the defendant directed at the forum state, therefore, can be enough to

**2.** MACM alleges that by accepting and cashing the check that accompanied the release, defendants thereby became bound by each of the terms of the release. It is the defendants' position that certain terms of the release were inconsistent with the settlement agreement the parties had reached and that it was never intended for these terms to be part of the release. They claim, therefore, that they are not bound by those terms of the release which were inconsistent with the settlement agreement and which they therefore deleted from the release document.

**3.** The long-arm statute also provides for service on non-residents who commit a tort in whole or in part in Mississippi. In its brief, MACM makes

reference to defendants' "tortious conversion," and thus presumably asserts that a tort has been committed in part in Mississippi. And the complaint does allege that defendants "intentionally converted" the settlement money. Defendants dispute that they committed any tort in Mississippi, but argue further that plaintiff has not even alleged any tort claim in the complaint and thus cannot attempt to predicate jurisdiction on the commission of any tort in Mississippi. The court need not address this issue at this time, however, since it can be easily concluded that jurisdiction is proper without reference to whether any tort is alleged to have been committed.

confer personal jurisdiction if that act gives rise to the claim being asserted. In contrast, when the act or transaction being sued upon is unrelated to the defendant's contacts with the forum state, personal jurisdiction does not exist unless the defendant has sufficient "continuous and systematic contacts" with the forum to support an exercise of "general jurisdiction."

*Id.* (citations omitted). Here, it is not suggested that the defendants had any "continuous and systematic contacts" with Mississippi. However, they clearly have had sufficient contact to justify this court's exertion of "specific jurisdiction."

In *Ruston Gas Turbines*, the Fifth Circuit explained further that "minimum contacts" for purposes of "specific jurisdiction" are satisfied

> by actions, or even just a single act, by which the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." The non-resident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state.

*Id.* (citations omitted).

■ Defendants appear to argue, in essence, that since they were never physically present in Mississippi in connection with the subject transaction, they have not actually had *any* contact with Mississippi. It is implicit in their position, therefore, that the exercise of jurisdiction cannot be countenanced under the due process clause based on a lack of minimum contacts. In particular, Jackson insists that he cannot be brought to defend the action in this court—and that he certainly never expected that he would be—since he never set foot in Mississippi and instead, conducted all negotiations with MACM from Alabama through the use of the mails and the telephone. In sum, he never left Alabama to perform any part of the transaction. Moore argues, in a similar vein, that while he was physically present in Mississippi for the surgery, this case has nothing to do with that surgery, and since he never came to Mississippi in connection with the settlement negotiations or consummation of

any settlement, he cannot be subject to suit here. Defendants' positions are without merit.

It is well established that physical presence in the state is not a prerequisite to the valid exercise of personal jurisdiction. *See Brown v. Flowers Indus., Inc.*, 688 F.2d 328 (5th Cir.1982). And there is ample proof that defendants otherwise had sufficient contacts with Mississippi in connection with the transaction underlying this action for the court to exercise "specific jurisdiction." Indeed, as disclosed by the documentary evidence presented by the parties, as well as Charles Dunn's uncontroverted affidavit, defendants initiated this transaction. Jackson, on Moore's behalf and presumably with his authority, initially wrote a letter to MACM in Mississippi to settle a medical malpractice claim that arose in Mississippi against a Mississippi physician, and threatening suit against that physician if the settlement demands were not met. Dunn responded by letter on August 30, 1993, offering to settle the claim for $40,000 in accordance with a settlement proposal "subject to the usual stipulations to be included in an Absolute Release." Jackson rejected that offer by telephone and made a counter-offer to settle the claim for $62,500. Dunn rejected that offer and made a second offer of $56,250 to settle. Jackson telephoned Dunn in Mississippi to accept the offer and thereafter, wrote a letter to Dunn in Mississippi confirming the settlement and requesting that Dunn "forward ... a check in that amount, as well as any settlement documents you would like executed" to finalize the matter. Dunn then sent to defendants the settlement check and release document, requesting that defendants execute the release and "return[ ] [it] to this [MACM's Mississippi] office within ten days." Defendants cashed the check and, after first refusing to execute the release provided by MACM, ultimately deleted certain terms of the release and returned it to MACM in Mississippi with an accompanying letter containing defendants' explanation of their modification of the release. These unrefuted facts compel the conclusion that defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within

**580**

the forum state." Consequently, they are properly subject to the jurisdiction of this court and their motion to dismiss will be denied.

 As an alternative to dismissal, defendants request that the court transfer the case to Alabama, presumably under 28 U.S.C. § 1404(a). That statute authorizes the court to transfer any action to any district in which it might originally have been brought "for the convenience of the parties and witnesses, and in the interests of justice." The burden is on the party seeking transfer to demonstrate that transfer is proper and in the court's opinion, defendants have not sustained their burden. The sole reason cited for requesting transfer is the convenience of the defendants, who contend that it would work an undue hardship on them if the case remains in Mississippi since it would require them to travel to Mississippi and to hire both Alabama and Mississippi counsel to defend the action. However, transfer under § 1404(a) is not proper where the effect of a transfer will be merely to shift the burden of inconvenience from one party to another. *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 651 F.Supp. 623, 630 (1986) (citing *Marbury–Pattillo Constr. Co., Inc. v. Bayside Warehouse Co.*, 490 F.2d 155 (5th Cir. 1974)). Defendants' request for transfer will, therefore, be denied.[4]

Based on the foregoing, it is ordered that defendants' motion to dismiss or, in the alternative, to transfer is denied.

ORDERED.

---

**4.** Defendant Moore asserts that he lacks the financial resources to hire both Mississippi and Alabama counsel to represent him. Rule 1 of the Local Rules of this court impose a requirement that all papers filed on behalf of a party who appears by counsel must be signed by "at least one attorney of record admitted to practice in the Court in which the action is pending." Because of his inability to afford both Alabama counsel and local counsel, the court will waive the local counsel requirement for defendant Moore. The court will further grant the motion of defendants' Alabama counsel, Charles A. McCallum III, for admission pro hac vice.