### FIRST MISSISSIPPI CORPORATION, Plaintiff,

v.

### THUNDERBIRD ENERGY, INC., Pyramid Mining, Inc., and Samuel S. Francis, Defendants.

### Civ. A. No. 3:94–CV–615BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 13, 1995.

---

Allan P. Bennett, John Chase Bryan, Watkins, Ludlam & Stennis, Jackson, MS, Frank C. Jones, David J. Onorato, King & Spalding, Atlanta, GA, for plaintiff First Mississippi Corp.

James L. Carroll, Susan McDonald, Mitchell, McNutt, Threadgill, Smith & Sams, David Watkins Mockbee, Mockbee, Hall & Drake, Jackson, MS, for defendants Thunderbird Energy, Inc., Pyramid Mining, Inc., and Samuel S. Francis.

## OPINION AND ORDER

BARBOUR, Chief Judge.

The Court has before it the Motions of the Defendants for Admission Pro Hac Vice and To Dismiss or, in the Alternative, for Change of Venue. The Court, having considered the Motions, response, and supporting memoranda, grants the Motion for Admission Pro Hac Vice, denies the Motion to Dismiss for Lack of Personal Jurisdiction, and denies the Motion for Change of Venue.

### I. INTRODUCTION

When this Court rules on a motion to dismiss without an evidentiary hearing, the Plaintiff need only present a prima facie case of personal jurisdiction. *Trinity Industries, Inc. v. Myers & Associates, Ltd.*, 41 F.3d 229, 230 (5th Cir.1995) (citing *Wilson v. Belin*, 20 F.3d 644 (5th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994)). The Court must accept as true the uncontroverted allegations in the complaint and resolve in favor of the complainant any factual conflicts posed by the affidavits. *Id.* (footnote omitted). The Court therefore draws most of its facts from Plaintiff's Complaint.

Defendants move to dismiss on the basis that this Court lacks personal jurisdiction over them. They ask in the alternative that the Court transfer the case to Kentucky, under 28 U.S.C. § 1404(a). The Court addresses both grounds of the Motion in turn, discussing the relevant facts as they relate to the applicable law.

### II. DISCUSSION

#### A. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.

##### 1. Mississippi Long–Arm Statute.

Under the Mississippi long-arm statute, a court may properly exercise jurisdiction over a nonresident (person or corporation) who makes a contract with a resident of Mississippi, to be performed in whole or in part by any party in Mississippi, so long as the exercise of jurisdiction comports with constitutional requirements of due process. Miss. Code Ann. § 13–3–57. *See Medical Assur. Co. of Mississippi v. Jackson*, 864 F.Supp. 576, 578 (S.D.Miss.1994) (good personal jurisdiction analysis). In this case, Defendants argue first that they are not subject to the reach of the Mississippi long-arm statute. They argue that because the subject matter of the contract in this lawsuit was located in Kentucky, and because the contract was executed in Kentucky, the provision under the statute requiring that the contract "be performed in whole or in part" in Mississippi was not met in this case. They base their argument on a number of decisions which they claim interpret the long-arm statute as requiring "that some significant event occur in Mississippi pursuant to the contract...." Defs.' Br. at 12–13.

The Plaintiff responds by detailing the contract negotiations and sale which led to this lawsuit. Under an agreement signed October 15, 1993, and effective September 30, 1993, the Plaintiff First Mississippi Corporation ("FMC") sold 100% of the outstanding shares of stock of Pyramid Mining, Inc. ("Pyramid"), a coal mining company which it owned, to Thunderbird Energy, Inc. ("Thunderbird"). FMC notes that Defendant Francis initially expressed his interest in buying Pyramid from FMC in March 1993, and that FMC was already acquainted with Francis because he (or one of several companies controlled by him) had earlier purchased the Indiana coal operations of Pyramid. The sale which is the subject of this lawsuit involved execution of a Stock Purchase Agreement, Promissory Note, and Escrow Agreement. According to FMC,

[D]efendants are required to make their Promissory Note and escrow fund payments to Mississippi. Until their breach, defendants in fact made these payments to Mississippi. Under the Stock Purchase Agreement, the Stock Pledge Agreement, and the Operating Agreement, defendants

are required to provide periodic financial and operating reports to First Mississippi in Mississippi for First Mississippi's review here. Until their breach, defendants supplied these reports to Mississippi. Moreover, in the Forum Selection Clause [of the Escrow Agreement], defendants agreed that this action should be filed only in Mississippi and consented to service of pleadings issued from Mississippi. The Escrow Agreement is administered by Deposit Guaranty National Bank in Mississippi. These factors obviously constitute performance "in whole or in part" in Mississippi.

Pl.'s Mem.Br. at 18. FMC also catalogues various negotiations, by phone or facsimile, between Francis in Kentucky and FMC in Jackson. FMC states that Francis attended a meeting in Jackson, Mississippi, on July 28, 1993, at which he outlined "in detail his proposal to acquire Pyramid." Pl.'s Mem.Br. at 8 (citing Summerford Aff. ¶ 5).

The Court is satisfied that the requirements of the Mississippi long-arm statute have been met in this case. FMC has presented a prima facie case that all parties had duties of performance in Mississippi under the sale and escrow agreements. In support of that finding, the Court further finds that FMC has presented a prima facie case that Defendant Francis was negotiating not just on his own behalf, but on behalf of Defendant Thunderbird as well. The requirements of the Mississippi long-arm statute are thus met as to all the Defendants. The Court next turns to due process considerations.

### 2. Due Process Analysis.[1]

█ A Court may only exercise in personam jurisdiction over a nonresident if that exercise of jurisdiction comports with due process. Jurisdiction may be asserted only where the nonresident has such minimum contacts with the forum state that his being required to defend a suit in the forum would not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The focus

of the due process inquiry is on whether the nonresident, by virtue of his contacts with the forum state, "purposefully availed himself of the benefits and protections of" the laws of the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The Fifth Circuit recently explained that the "minimum contacts" inquiry has been "refined to determine two types of personal jurisdiction—specific and general." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 419 (5th Cir.1993).

A state exercises "specific jurisdiction" over a non-resident defendant when the lawsuit arises from or relates to the defendant's contact with the forum state. A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted. In contrast, when the act or transaction being sued upon is unrelated to the defendant's contacts with the forum state, personal jurisdiction does not exist unless the defendant has sufficient "continuous and systematic contacts" with the forum to support an exercise of "general jurisdiction."

*Id.* (citations omitted).

█ Here, though FMC suggests that Samuel Francis had had some "continuous and systematic contacts" with Mississippi, they concentrate their argument on their assertion that this Court has "specific jurisdiction" over the Defendants. Minimum contacts for purposes of specific jurisdiction are satisfied by actions, or even just a single act, by which the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." The non-resident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state.

*Id.* (citations omitted).

Defendants do not argue that they have had no contact with Mississippi. They instead argue that evaluation of the factors

1. In this part of its Opinion and Order, the Court follows the analytical structure outlined by Judge Lee in *Medical Assurance Co. of Mississippi v. Jackson,* cited above.

surrounding the contract, "such as prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealings," does not support a finding of minimum contacts. Defs.' Mem. Br. at 14–15. They rely heavily on *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir.1983), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984). Notably, however, they refer only peripherally to the more recent decision of the United States Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

In *Burger King*, Rudzewicz, a Michigan resident, applied for a Burger King franchise at the Michigan office of Burger King. Rudzewicz negotiated by mail and telephone with Burger King at its Michigan office and its Miami headquarters. The final franchise agreement subjected Rudzewicz to monitoring of his operations by Burger King in Miami, and chose Florida law to govern the contract. A dispute arose, and following negotiations between Rudzewicz and Burger King at its Michigan and Miami offices, Burger King terminated Rudzewicz's franchise. The Supreme Court, relying upon an evaluation of several factors, held that Rudzewicz was subject to personal jurisdiction in Florida. Though Rudzewicz had no physical ties to Florida, he had "reached out beyond" Michigan and negotiated with a Florida corporation, entered into a long-term contractual arrangement "that envisioned continuing and wide-reaching contacts with Burger King in Florida," and had "carried on a continuous course of direct communications by mail and by telephone" with Burger King in Florida. *Burger King* at 480–81, 105 S.Ct. at 2186. The Court also relied on the fact that the contract chose the law of the forum, Florida, to govern disputes. *Id.* at 481–82, 105 S.Ct. at 2186–87.

█ Many of the factors which the Court found persuasive in *Burger King* are present here. Defendants (Francis and/or Thunderbird) "reached out beyond" Kentucky and negotiated with a Mississippi corporation. They negotiated the contracts at issue extensively by letter, facsimile and telephone to Mississippi, and agreed that various pay-

ments were to be made to Mississippi. The Forum Selection Clause, contained in the Escrow Agreement, dictates that "any legal action concerning any and all claims, disputes, or controversies arising out of or relating to this Escrow Agreement shall only be commenced in the State of Mississippi." These facts lead this Court to the conclusion that Defendants purposefully availed themselves of the privilege of conducting activities within the forum state. Consequently, they are properly subject to the jurisdiction of this Court and their Motion to Dismiss will be denied.

## B. MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

### 1. The Forum Selection Clause.

█ As an alternative to dismissal, Defendants request that the Court transfer the case to Kentucky, under 28 U.S.C. § 1404(a). That statute reads as follows:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The burden is on the party seeking transfer to demonstrate that transfer is proper, and in the opinion of the Court, Defendants have not sustained their burden.

█ Guiding the decision of the Court in this case, notwithstanding the suggestion by both parties that the Court enter into a factorial analysis, is the forum selection clause contained in the Escrow Agreement (discussed in section II.A.2, above). Such a clause is prima facie valid and should be enforced unless the Defendants can show this Court that enforcement would be unreasonable. *Seattle–First Nat'l Bank v. Manges*, 900 F.2d 795, 799 (5th Cir.1990) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). For enforcement to be "unreasonable," the clause must be invalid for fraud or overreaching, or enforcement of the clause would effectively deprive the Defendants of their day in Court. *Manges*, 900 F.2d at 799. Stated another way, a forum selection clause

overrides even strong cases for change of venue, unless the moving party shows that enforcement of the clause is legally unreasonable. In considering whether to enforce a forum selection clause, a finding of fraud or overreaching is to be based only on the conditions and negotiations as they existed at the time the parties agreed to the clause. *See Id.* (noting that "defendants adduced no evidence that [plaintiffs] engaged in fraud or overreaching *in negotiating the clause* ...") (emphasis added.))

In their Reply Brief, Defendants attempt to minimize the importance of the forum selection clause in two ways. First they state that ."plaintiff has sued to enforce rights created by the Stock Purchase Agreement, not the Escrow Agreement," Defs.' Rep.Br. at 7, and conclude that the forum selection clause should therefore have no effect on this lawsuit. The Court, however, having read paragraph 19 of Plaintiff's Complaint,[2] is satisfied that at least part of Plaintiff's claim arises out of or relates to the Escrow Agreement. Second, Defendants argue that even if some claims arise from the Escrow Agreement, the Agreement should not be·enforced as *Manges* dictates, because "Defendants have formation defenses such as fraudulent inducement and misrepresentation." Defs.' Rep.Br. at 7. Defendants' shallow claims of fraud, misrepresentation, and overreaching are unsupported by their brief or by the record at this stage, and the Court finds that they have not carried their burden of proving that this lawsuit should be transferred to Kentucky.

### 2. Consideration of Factors Other Than the Forum Selection Clause

In a case in which no forum selection clause is present, the Court normally queries whether the 1404(a) transfer would serve the convenience of the parties and witnesses, and be in the interests of justice. A comprehensive compilation of matters normally considered by a Court contemplating transfer under 1404(a) is set forth .in *Radio Santa Fe, Inc. v. Sena:*

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process, where necessary, over witnesses; (3) the cost of obtaining witnesses for attendance at trial; (4) the possibility of a view of the premises, if appropriate; (5) the enforceability of a judgment; (6) administrative difficulties of the courts; (7) the local interest of the controversy, and the imposition of jury duty on citizens residing in a community having no relation to the litigation; (8) the propriety of having the action tried in a forum "at home" with the state law governing the case; (9) ·the plaintiff's choice of forum; (10) the possibility that trial in the original forum· will result in inconvenience, vexation, oppression, or harassment of the defendants; and (11) "all other practical problems that make the trial of a case easy, expeditious, and inexpensive."

*Radio Santa Fe, Inc. v. Sena,* 687 F.Supp. 284, 287 (E.D.Tx.1988) (cited in *Fullman v. AAA Cooper Transportation Co.,* 732 F.Supp. 54, 55 (N.D.Miss.1990)).

Where (as·here) a forum selection clause is present, consideration of the above factors still might lead a Court to conclude that enforcement of the clause would effectively· "deprive [the party moving for the change of venue] of [his] day in court." *Manges,* 900 F.2d at 799. However, the Court could only reach such a conclusion if the factors supporting change overwhelmingly favored the forum other than the one upon which the parties agreed. Such a situation would be rare, and has not occurred in this case.

Plaintiff, relying on *Apache Products Co. v. Employers Insurance Co. of Wausau,* 154

---

**2.** The paragraph reads as follows:

Thunderbird and Pyramid are in material breach of the Agreement and the Escrow Agreement because they have failed to make payments as required· under their Reclamation Escrow Obligation. As of the date of this Complaint, Thunderbird and Pyramid have delinquent payment obligations under the Agreement and Escrow Agreement of approximately Two Hundred Fifty Thousand Dollars ($250,-000) has failed [sic—"and have failed?"] *to* escrow funds for reclamation costs in the amount required by the Contract.

Complaint at 6, ¶ 19. It is clear to the Court that Plaintiff is bringing a breach of contract claim under the Escrow Agreement, as well as the Sales Agreement.

F.R.D. 650, 653 (S.D.Miss.1994), correctly argues that its choice of forum, factor (9) above, is entitled to great weight, especially where, as here, the forum is in the district in which it resides. *See also Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 651 F.Supp. 623 (S.D.Miss.1986) (same). Plaintiff also points out that factor (8) supports the propriety of this forum, since the agreements at issue in this case provide that Mississippi law will govern the dispute. Plaintiff also makes a perfunctory argument that the first and third factors, access to sources of proof, and cost of obtaining witnesses for attendance at trial, support their choice of venue. The Court believes, however, after viewing the record before it, that the first and third factors point more strongly toward transfer to Kentucky.[3]

Defendants, of course, argue that the above factors support transfer to Kentucky. Besides their argument that the second and third factors weigh in their favor (see note three, *supra*), Defendants loosely argue the factors above in terms of "public" and "private" interests laid out by the Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Defendants write:

> In terms of the public interests ..., most of them weigh in favor of changing venue to Kentucky. The burden of trying the case should most appropriately be placed on jurors in Kentucky [factor 7], who are in closer proximity to the defendants and the subject matter of the litigation.... Kentucky residents also have an interest in having the case adjudicated close to home because it involves alleged misrepresentations as to the quantity and quality of coal produced and sold by a

western Kentucky mining company to a western Kentucky power plant....

In terms of private interests, only the plaintiff's choice of forum [factor 9] weighs in favor of the Southern District of Mississippi. Access to sources of proof [factor 1] counsels in favor of a Kentucky trial. All defendants reside in that state [factors 2 and 3], and, most importantly, Pyramid is located in that jurisdiction.... Any trip that the jury might take would be to the coal fields and processing plants of Kentucky [factor 4]. The Western District of Kentucky could better facilitate this contingency.

Defs.' Br. at 21–22.

If the Court were to apply a strict factorial analysis, using only the factors suggested in *Radio Santa Fe*, it would probably find that they suggest transfer to Kentucky. However, as the Court held in section II.B.1., above, the overriding consideration in this case is not the factorial analysis, but the forum selection clause. If the factors urge transfer to Kentucky, they do not overwhelmingly support such a transfer, and the Court concludes that the case should remain in the Southern District of Mississippi.

### III. CONCLUSION

The Court holds that, under the Mississippi long-arm statute, and consistent with due process considerations, it has personal jurisdiction over all Defendants to this action. The Court also holds that the forum selection clause, viewed in light of Plaintiff's choice of forum and the other factors discussed above, makes this forum a proper one in which to try this lawsuit. Consequently, Defendants' Motion to Transfer this case to the Western District of Kentucky should be denied.

**3.** Plaintiff states that "the books and records of First Mississippi and its employees whom defendants state are likely to be called as witnesses in this action are located in Mississippi and those First Mississippi employees would be greatly inconvenienced by being forced to litigate this matter in Kentucky." Pl.'s Br. at 27. Defendants, however, are much more specific in their categorizing of witnesses. They identify twenty-two nonparty witnesses, all of whom reside in Kentucky, and none of whom could be compelled to appear in Mississippi. They also state that the only Mississippi witnesses identified by Defen-

dants work for Plaintiff. They also argue that "unnamed current and former employees" of several Kentucky companies "will be important witnesses that could not be compelled to appear in Mississippi." Defs.' Reply Br. at 8–9. Finally, they state that three of Plaintiff's five nonparty witnesses are Kentucky residents who could not be compelled to testify in Mississippi, and the other two Mississippi witnesses "are bank employees who presumably will testify about what may be relatively uncontroverted issues in the trial." *Id.* at 9.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or, in the Alternative, to Transfer this Action, is hereby denied.

IT IS FURTHER ORDERED that the Motion for Admission Pro Hac Vice of Aubrey B. Harwell and Delta Anne Davis is hereby granted.

SO ORDERED.