**REGENT LIGHTING CORPORATION,**
Plaintiff,

v.

**GALAXY ELECTRICAL MANUFACTURING, INC., Defendant.**

No. 2:95cv38.

United States District Court,
M.D. North Carolina,
Greensboro Division.

April 29, 1996.

Robert Wishart, Pamela Duffy, Burlington, NC, for plaintiff.

Cynthia Wittmer, Catharine Arrowood, Raleigh, NC, for defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court on Defendant Galaxy Electrical Manufacturing, Inc.'s Motion to Dismiss or, in the alternative, Motion to Transfer Venue and Plaintiff Regent

Lighting Corp.'s Motion to Compel Responses to Discovery.

## I. FACTUAL BACKGROUND

Plaintiff Regent Lighting Corp. ("Regent") is a Delaware corporation with its principal place of business in Burlington, North Carolina. Regent manufactures consumer lighting products such as outdoor security lighting fixtures. Defendant Galaxy Electrical Manufacturing, Inc. ("Galaxy") is a Florida corporation and also manufactures outdoor security lighting fixtures. On April 20, 1993, Regent filed a complaint against Galaxy in this Court for patent and trademark infringement, unfair trade practices, and common law trade dress infringement.

In its 1993 complaint Regent alleged that Galaxy's mercury vapor security light, Model No. YL–175–M1, infringed upon Regent's patent. On November 23, 1993, the parties entered into a settlement agreement in which Galaxy agreed to pay Regent $10,000 and promised to stop selling mercury vapor security lights which infringed upon Regent's patent. Galaxy also agreed to stop labeling its products as being compliant with Underwater Laboratory ("UL") regulations unless the products were actually in compliance. In exchange for these promises, Regent agreed to dismiss its complaint.

In February 1994 at a trade exposition in Dallas, Texas representatives of Regent visited Galaxy's booth and saw on display a Galaxy light fixture which had been the subject of the settlement agreement. The light had not been modified as the agreement required. In July 1994 agents of Regent purchased Galaxy light fixtures in Atlanta, Georgia which were marked as being approved by ETL Testing Laboratory, Inc. ("ETL") but in fact were not in compliance with either ETL or UL standards.

On October 7, 1994, Regent filed this action for unfair and deceptive practices, breach of the settlement agreement, and injunctive relief in Alamance County Superior Court. On January 12, 1995, Galaxy filed a Notice of Removal pursuant to 28 U.S.C. § 1441(a) in this Court. Galaxy then filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) and

for improper venue, or in the alternative, Motion to Transfer Venue. Regent filed a Motion to Compel Responses to Discovery regarding the jurisdictional issues. For the reasons that follow, Galaxy's Motion to Dismiss, or in the alternative, Motion to Transfer Venue is DENIED and Regent's Motion to Compel Responses to Discovery is DENIED as being moot.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

■■■ When a court's personal jurisdiction is challenged under Fed.R.Civ.P. 12(b)(2), the burden is on the plaintiff to prove the existence of jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993). In deciding a motion to dismiss for lack of personal jurisdiction, the court may rule on the basis of the pleadings and affidavits, postpone the decision to permit discovery, or hold an evidentiary hearing. *Crown Cork & Seal Co., Inc. v. Dockery,* 886 F.Supp. 1253, 1256 (M.D.N.C.1995). If the court, as in the present case, rules on the motion without an evidentiary hearing, then the plaintiff need only prove a prima facie case of jurisdiction. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). In determining whether the plaintiff has established a prima facie case of personal jurisdiction, the court must resolve all factual disputes in the plaintiff's favor. *Mylan,* 2 F.3d at 60.

■■ When addressing a question of personal jurisdiction the court engages in a two-step inquiry. *Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.,* 995 F.2d 474, 477 (4th Cir.1993). First, the court must determine whether the applicable long-arm statute permits the exercise of jurisdiction over the defendant. *Id.; Vishay Intertechnology Inc. v. Delta Int'l Corp.,* 696 F.2d 1062, 1064 (4th Cir.1982). Next, the court determines whether the exercise of jurisdiction comports with due process under the Fourteenth Amendment. *Ellicott,* 995 F.2d at 477.

North Carolina's long-arm statute, N.C.Gen.Stat. § 1–75.4, was enacted "to make available to the North Carolina courts the full jurisdictional powers permissible un-

der federal due process." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977). Since the North Carolina legislature designed the long-arm statute to extend personal jurisdiction to the limits permitted by due process, the two-step inquiry merges into one question: whether the exercise of jurisdiction comports with due process. *Ellicott*, 995 F.2d at 477, *Hanes Companies, Inc. v. Ronson*, 712 F.Supp. 1223, 1226 (M.D.N.C.1988).

■ A state's sovereignty over persons, property, and activities extends only within the state's geographical borders, therefore, a state's laws have no application in another state, except as permitted by that state or by comity. *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 722, 24 L.Ed. 565 (1878); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 941 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1103, 130 L.Ed.2d 1070 (1995). In order for a state to exercise personal jurisdiction over a non-resident defendant, due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). "Minimum contacts" means that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). A single act or contract which creates a "substantial connection" to the forum state can support jurisdiction. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Minimum contacts requires that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

■ Personal jurisdiction may be either specific or general. *Slaughter v. Life Connection Of Ohio*, 907 F.Supp. 929, 933 (M.D.N.C.1995). Specific jurisdiction is established where the forum state asserts personal jurisdiction over a defendant in a suit "arising out of or related to" that defendant's contacts with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). General jurisdiction exists where the claim does not have any relation to the defendant's contacts with the forum state. *Slaughter*, 907 F.Supp. at 933. In order to establish general jurisdiction, due process requires that the defendant's contacts with the forum state be systematic and continuous. *Id.*

To determine the reach of personal jurisdiction, the Fourth Circuit has fashioned the following test which considers whether:

(1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and

(2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

*Lesnick*, 35 F.3d at 945–46.

■ In the present case, Defendant Galaxy contends that it does not have sufficient contacts with North Carolina to warrant this Court's exercise of jurisdiction over it. To support this contention, Galaxy asserts that it is not authorized to do business in North Carolina and does not own or lease any property in the state. Galaxy also states that in 1994 it only sold $2,955.19 worth of its products in North Carolina which is one tenth of one percent of the company's total national sales for that year. Galaxy argues that these contacts are insufficient for this Court's exercise of general jurisdiction.

However, in order to resolve an earlier claim of infringement filed by Regent against it, Galaxy executed a settlement agreement with Regent which provides as follows:

1. ... Galaxy will not hereafter manufacture or import any outdoor, mercury security lights in the United States or place any further orders for any outdoor, mercury vapor security lights for sale to customers in the United States which are identical to security lights carrying the above-identified model numbers, substantially identical thereto, or otherwise fall within any of the claims of ... [Regent's] patent or any reissues thereof, while such claims remain valid or which otherwise infringe Regent's trade dress and/or trademark rights in the United States.

* * * * *

3. Galaxy agrees to cease labeling any product for sale to customers in the United States or disseminating any advertising in the United States indicating UL compliance unless and until Galaxy has compiled (sic) with UL regulations concerning use of the UL notice. As far as the outdoor mercury vapor security light and its ballast are concerned, Galaxy shall provide proof to Regent of UL approval by a copy of the approval and the UL procedure that accompanies such copy prior to disseminating any advertising indicating UL compliance.

Exhibit C, Plaintiff's Complaint, 2–3. Galaxy also agreed to pay Regent $10,000 in settlement for Regent's claims. In addition, the settlement agreement contained an indemnification provision in the event one of the parties had to sue to enforce the agreement. This provision provided that the prevailing party would recover its attorney's fees and litigation expenses. *Id.* at 4.

The present action by Regent is based upon its allegation that Galaxy has breached this settlement agreement with Regent. Plaintiff's Complaint, ¶¶ 52–58. A single contract executed in North Carolina or performed in North Carolina may be a sufficient contact upon which to base personal jurisdiction. *Capstar Corp. v. Pristine Industries, Inc.,* 768 F.Supp. 518, 524 (W.D.N.C.1991).

In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Court held that a non-resident defendant was subject to personal jurisdiction on the basis of a contract between the defendant and a resident of the forum state. *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185. The plaintiff in *Burger King* was a Florida corporation which sought to sue the defendant, a Michigan resident, in Florida for breach of a franchise contract. *Id.* at 464–65, 105 S.Ct. at 2177–78. The Court stated that the existence of the contract alone was not sufficient to establish minimum contacts, but noted that a contract is just an intermediate step which links the parties' prior negotiations with future consequences that are the object of the contract. *Id.* at 478–79, 105 S.Ct. at 2185–86. The Court stated that "[i]t is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum." *Id.* at 479, 105 S.Ct. at 2185.

In *Medical Assurance Co. of Mississippi v. Jackson,* 864 F.Supp. 576 (S.D.Miss.1994), the Court held that a settlement agreement may provide a basis for specific jurisdiction over a non-resident defendant. In *Jackson,* the plaintiff was a Mississippi insurance company that had sent a settlement check and release agreement to the defendants. *Id.* at 577. The defendants, both Alabama residents, cashed the check but excised certain provisions in the release before returning it to the insurance company. *Id.* at 577–78. The insurance company then sued the defendants in Mississippi for breaching the settlement agreement. *Id.* at 578.

The defendants moved to dismiss for lack of personal jurisdiction. The defendants argued that since the contract was executed by them in Alabama and since no part of the settlement agreement would be performed in Mississippi, they did not have sufficient contacts with Mississippi. *Id.* at 578.

The Court found, however, that the defendants had sufficient contacts with Mississippi for the exercise of specific jurisdiction. *Id.*

at 579. The Court noted that the defendants initiated the settlement negotiations with the insurance company, accepted the settlement check, and mailed the modified release to the insurance company in Mississippi. *Id.* The Court found that these facts compelled the conclusion that the defendants purposefully availed themselves of the privilege of transacting business in Mississippi. *Id.* at 579–80.

Similarly, in *Edmonton World Hockey Enterprises v. Abrahams*, 658 F.Supp. 604 (D.Minn.1987), the Court found that a settlement agreement was a sufficient basis to establish minimum contacts. The Court cited *Burger King* and noted that the negotiations which led to the settlement agreement had occurred in Minnesota, the forum state. *Id.* at 607. The Court also noted that one consequence of the agreement was the dismissal of a pending lawsuit in Minnesota. *Id.* The Court found that these factors were sufficient to show that the defendant had purposefully established contacts in Minnesota. *Id.*

In the instant case, the Court concludes that Galaxy's negotiations with Regent over the settlement agreement and the consequences of that agreement are clear evidence that Galaxy has purposefully created a substantial connection to North Carolina. *See Lesnick*, 35 F.3d at 945–46. In exchange for Galaxy's promises to cease infringing upon Regent's patent and mislabeling its products, Regent agreed to dismiss its lawsuit filed in North Carolina. The indemnification provision in the agreement is evidence that the parties contemplated future litigation if one of them breached its obligations under the agreement. The dismissal of Regent's lawsuit, a consequence of the settlement agreement, occurred in North Carolina. Under these circumstances, the Court finds that Galaxy purposefully availed itself of the privilege of conducting activities in North Carolina. *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2184 (quoting *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239). Thus, the first prong of the Fourth Circuit's *Lesnick* test is satisfied. *Lesnick*, 35 F.3d at 945–46.

■ The second prong of the *Lesnick* test requires this Court to consider whether the exercise of jurisdiction over Galaxy would offend traditional notions of fair play and substantial justice. *Lesnick*, 35 F.3d at 946. The Court must consider such factors as the burden on the defendant; the interest of the forum state; the plaintiff's interest in obtaining relief; the efficient resolutions of controversies between the states; and the states' shared interest in furthering fundamental substantive social policies. *Id.* The Court finds it is plausible that litigating this matter in North Carolina places a burden on Galaxy, a Florida corporation. The Court concludes, however, that other factors described in *Lesnick* outweigh any burden Galaxy will face upon litigation of this matter in North Carolina. For example in a general sense, North Carolina, as the forum state, has a "manifest interest in providing effective means of redress for its residents." *Burger King*, 471 U.S. at 482, 105 S.Ct. at 2187 (quoting *McGee*, 355 U.S. at 223, 78 S.Ct. at 201). In addition, Regent, a Delaware corporation with its principal place of business in North Carolina, has a significant interest in obtaining relief in North Carolina.

As for the other *Lesnick* factors, *i.e.* the efficient resolution of controversies and the shared interests of the states involved, the Court finds that it is equally efficient to litigate this matter in either North Carolina or Florida. The Court further finds that no fundamental social policy is impacted by litigating this matter in North Carolina. Therefore, after considering the *Lesnick* factors, the Court finds that its exercise of jurisdiction over Galaxy would not offend traditional notions of fair play and substantial justice so as to violate due process. Accordingly the Court concludes that Galaxy has a substantial connection with North Carolina so that the exercise of the Court's specific jurisdiction does not violate due process. Galaxy's Motion to Dismiss on the ground of lack of personal jurisdiction is therefore DENIED. The Court notes that since it finds it has specific jurisdiction over Galaxy, the Court need not consider the parties' arguments regarding general jurisdiction.

## III. MOTION TO DISMISS FOR IMPROPER VENUE

Galaxy made a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue.

Venue for a corporate defendant is proper in any judicial district in which the corporation is subject to personal jurisdiction. 28 U.S.C. § 1391(c) (1993). Since the Court has concluded that Galaxy is subject to personal jurisdiction in this district, venue is proper. Accordingly, Galaxy's Motion to Dismiss for Improper Venue is DENIED.

## IV. MOTION TO TRANSFER VENUE

■ In the alternative, Galaxy has moved for a transfer of venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Galaxy contends that such a transfer would serve the convenience of potential witnesses, reduce the considerable expense of transporting witnesses and evidence to North Carolina, and alleviate the hardship imposed on Galaxy by having to defend this action in North Carolina.

Section 1404(a) provides as follows:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a) (1993).

■ In considering a change of venue, the court must weigh the factors involved and " 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' " *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). The court should refrain from transferring venue if to do so would simply shift the inconvenience from one party to another. *Tools USA and Equipment Co. v. Champ Frame Straightening Equipment Inc.*, 841 F.Supp. 719, 721 (M.D.N.C.1993). Several factors to be considered in deciding a motion to transfer venue are the plaintiff's initial choice of venue, residence of the parties, ease of proof, availability of compulsory process, cost of obtaining attendance of willing witnesses, expeditious and inexpensive trial, and the interest of localized litigation. *Id.*

In the instant case, the transfer of this matter to the Southern District of Florida would only shift the inconvenience of the trial location from Regent to Galaxy. Galaxy contends, however, that its employees, sales information, and evidence are located in Florida, Georgia, and New York and that it would suffer significant inconvenience and expense transporting its witnesses and evidence to North Carolina for trial. Regent's employees and evidence are located in North Carolina, and it would suffer similar inconvenience and expense transporting its witnesses and evidence to Florida for trial. Since both parties are equally inconvenienced, Galaxy has not met its burden of showing why Regent's choice of this forum should be disturbed. Accordingly, Galaxy's Motion to Transfer Venue is DENIED.

## V. MOTION TO COMPEL RESPONSES TO DISCOVERY

In response to Galaxy's Motion to Dismiss, Regent made a Motion to Compel Responses to Discovery in order to have Galaxy's president, Simon Kao, provide certain information relating to the personal jurisdiction issue. Since the Court has denied Galaxy's Motion to Dismiss, Regent's Motion to Compel is now moot. Therefore, Regent's Motion to Compel Responses to Discovery is DENIED.

## VI. CONCLUSION

The Court finds that the negotiations and consequences of the settlement agreement between Regent and Galaxy provides a substantial basis for this Court's exercise of specific jurisdiction over Galaxy and does not offend traditional notions of fair play and substantial justice. Therefore, Galaxy's Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Venue is hereby DENIED. The Court also finds that the inconvenience to be suffered by both parties in litigating this matter in this district is offsetting. Accordingly, Galaxy's Motion to Transfer Venue is hereby DENIED. Regent's Motion to Compel Responses to Discovery is DENIED as being moot.

An order in accordance with this Memorandum Opinion shall be entered contemporaneously herewith.