**STRATEGIC OUTSOURCING, INC.; Summit Services, Inc.; Summit Services, Inc. Health Plan; and Strategic Outsourcing, Inc. Health Plan, Plaintiffs,**

v.

**COMMERCE BENEFITS GROUP AGENCY, INC.; South Lorain Merchants Association, Inc.; SLMA Health Benefits Plan; SLMA HBPI Trust; Diversified Benefit Plans Agency, Inc.; and Thomas J. Patton, Defendants.**

Civil No. 3:97CV613.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Feb. 25, 1999.

Clifford R. Jarrett, John H. Culver, III, Kennedy, Covington, Lobdell & Hickman, Charlotte, NC, for plaintiffs.

William F. Womble, Jr., John S. Hughes, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, for defendants Commerce Benefits Group, Diversified, Thomas Patton.

George K. Evans, Jr., Cansler, Lockhart, Campbell, Evans, Bryant & Garlitz, Charlotte, NC, for South Lorain Merchants Assn., SLMA Health Benefits Plan, SLMA HBPI Trust.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendants' motions to dismiss for lack of personal jurisdiction and preemption. The Plaintiffs oppose dismissal and for the reasons stated herein, the motions are denied with minor exceptions.

## I. FACTUAL BACKGROUND

Strategic Outsourcing, Inc. (SOI) provides small business owners with personnel administration services, including payroll and tax services and health benefits. Summit Services, Inc. (Summit), which was acquired by SOI in 1997, was in the same business. Both corporations provided health care benefits to their employees in the form of employee welfare benefit plans. From June 1996 through November 1997, Commerce Benefits Group, Inc. (CBG) acted as the third-party administrator for Summit's employee health insurance plans. During this time period, South Lorain Merchants Association, Inc. (SLMA) provided the health insurance for Summit and Diversified Benefit Plans Agency, Inc. (Diversified) acted as the claims administrator for SLMA. Over $1 million in premiums and fees were paid during this period.

When SOI acquired Summit in 1997, CBG proposed that SOI provide health

care benefits for the new employee welfare benefit plan by becoming a member in SLMA which was described as a self-insured health plan providing coverage for small businesses. SOI alleges SLMA was actually administered by CBG and Diversified. From June 1997 through the end of 1998, SOI paid in excess of $1 million for premiums and handling fees to CBG and Diversified.

Plaintiffs allege that CBG and Diversified are both owned and/or controlled by Thomas Patton (Patton). They also allege that CBG, Diversified and SLMA are affiliated. The Plaintiffs became dissatisfied with CBG because the health care claims of its employees were not timely processed or paid and improper denials of coverage were routinely made. Sometime after June 1997, CBG unilaterally and without consent changed the definition of "pre-existing condition" in the health care policies. Plaintiffs also paid additional premiums for reinsurance coverage, a contract whereby an insurer transfers all or part of the risk above a certain amount which it underwrites to a different insurer. SLMA agreed to provide this coverage but failed to obtain it; and, in fact, the reinsurance coverage was cancelled. Claiming these and other improper business transactions, Plaintiffs initiated this action in December 1997.

## II. PROCEDURAL HISTORY

The case has had a tortured journey through the federal system. The complaint was filed in December 1997 asserting only state law causes of action and was promptly met with motions to dismiss by the Defendants based on lack of personal jurisdiction and preemption by the Employees Retirement Security Income Act (ERISA), 29 U.S.C. §§ 1001, *et. seq.* In March 1998, a Memorandum and Recommendation was filed by the United States Magistrate Judge recommending the action be dismissed. However, a U.S. District Court Judge later ruled the parties could submit additional pleadings after which the matter would be resubmitted to the Magistrate Judge, thus annulling the Memorandum and Recommendation. In June 1998, a new motion to dismiss based on lack of personal jurisdiction was filed and before responses were due, the case was administratively reassigned to the undersigned. In August 1998, the Plaintiffs were allowed to amend their complaint to state ERISA claims. This resulted in amended answers and renewed motions to dismiss. The motions are now ripe for disposition.

## III. DISCUSSION

### A. Personal Jurisdiction.

Plaintiffs' amended complaint alleges fourteen causes of action, four of which are based on ERISA violations. Jurisdiction is alleged to be grounded in both federal question and diversity jurisdiction. Defendants claim there is no personal jurisdiction, an issue which must be considered first, since if there is indeed no personal jurisdiction, the action falls on that basis alone.

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff must "make a *prima facie* showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *In re The Celotex Corp.*, 124 F.3d 619, 629 (4th Cir.1997). The pleadings and inferences drawn from them are to be construed in favor of the plaintiff. *Id.*

ERISA provides that "[w]here an action under this subsection is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place or where a defendant resides or may be found, and process may be served in any other district court where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Here, the Plaintiffs are foreign corporations with their principal places of business in Charlotte, North Carolina. The corporate Defendants are foreign corporations with their principal

places of business in other states. Patton, an Ohio resident, is the president of CBG and Diversified, the latter of which the Defendants allege is now defunct. Plaintiffs allege the breaches occurred here in North Carolina.

■ The ERISA provision allowing for service of process anywhere within the nation has been interpreted for purposes of personal jurisdiction as a "national contacts test." "[W]hen a federal court attempts 'to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States[,]'" as opposed to the state in which suit is brought. *Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822, 825 (5th Cir.1996) **(applying national contacts test to ERISA action although with "grave misgivings")** (citations omitted). Although not in the context of an ERISA case, the Fourth Circuit has held that where Congress has provided for nationwide service of process, the service thereof is sufficient to establish personal jurisdiction.

> "Where," as here, "Congress has authorized nationwide service of process ... so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant." ... [W]hen the defendant is located within the United States, he "must look primarily to federal venue requirements for protection from onerous litigation" because "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."

ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 626–27 (4th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998) (citations omitted). The parties here concede proper service has been effected on the Defendants. Thus, *in personam* jurisdiction over them is established as long as it comports with the Fifth Amendment. *Id.; accord, United Electrical, Radio and Mach. Workers of America* v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1st Cir.1992) (**"When a district court's subject matter jurisdiction is founded upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment."**); 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1067.1 at 311 (2d ed. 1987) (**"[A]ll the courts of appeals that have addressed the question have applied a national contacts standard when process is served under an applicable federal service provision."**). It is undisputed that the Defendants have sufficient national contacts: they are corporations of states of the United States; they have their principal places of business within the United States; they employ numerous American citizens and do business throughout the country. *Board of Trustees, etc. v. McD Metals, Inc.,* 964 F.Supp. 1040, 1045 (E.D.Va.1997) **(applying the national contacts test to an ERISA action).** "The ERISA statute satisfies [the Fifth Amendment] because parties who engage in any of the covered activities are put on fair notice that they might be called to answer for their actions in any federal court in the United States." *Green v. William Mason & Co.,* 996 F.Supp. 394, 397 (D.N.J.1998); *accord, IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049 (2d Cir.1993) **(applying national contacts test to ERISA matter).** The Court finds there is personal jurisdiction over the Defendants as to the claims brought under ERISA.[1]

1. Moreover, even under the minimum contacts standard, the Court would find personal jurisdiction established. First, the North Carolina long-arm statute authorizes the exercise of jurisdiction and second, that exercise comports with Fourteenth Amendment due pro-

## B. Preemption

In addition to the ERISA claims, Plaintiffs have alleged two causes of action for an accounting, four claims based on breach of contract, and claims for fraud, constructive fraud, civil conspiracy and constructive trust. Defendants have moved to dismiss these state law claims on the grounds of preemption.

ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). State law includes "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). Thus, state common law claims are included within the definition. A state law "relates to an employee benefit plan if it has a connection with, or a reference to, such a plan." *Metropolitan Life Ins. Co. v. Pettit*, 164 F.3d 857, 861 (4th Cir.1998). In determining whether the state law claims "relate to" the ERISA plan, ERISA's congressional mandate must be considered.

> ERISA's express purpose is to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.... [T]he Supreme Court [has] determined that economic considerations support[ ] Congress's decision to subject employee benefit plans to only one body of national, uniform law because ERISA would thereby minimize administrative and financial burdens on employers. State laws that obstruct the accomplishment of these goals must give way to ERISA.

*Id.* at 862. If a state law, or cause of action, would affect relations between plan entities or impact the administration of a plan, it is preempted. *Id.*

The broadness of this language has been traditionally interpreted to require ERISA preemption on a wide scale. However, in 1995 the Supreme Court significantly narrowed the scope of ERISA preemption in *New York State Conference of Blue Cross*

---

cess standards. *Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir.1993). CBG sent monthly billing statements to the Plaintiffs' North Carolina offices; the Plaintiffs mailed premiums exceeding $2 million to the Defendants. In 1997, SOI wired over $900,000 from North Carolina to an account in the name of Diversified to pay bills sent by CBG on behalf of itself and SLMA. This is sufficient to invoke North Carolina's long-arm jurisdiction. *ETR Corp. v. Wilson Welding Service*, Inc., 96 N.C.App. 666, 668–69, 386 S.E.2d 766, 767 (1990) (**the transmittal of a check drawn on a North Carolina bank by a North Carolina plaintiff and sent to an out-of-state defendant constitutes "a thing of value" for purposes of the long-arm statute**); N.C.Gen.Stat. § 1–75.4(5)(d) (**invoking personal jurisdiction in any action which relates to things of value shipped from this state by the plaintiff to the defendant**). As to the sufficiency of contacts, CBG representatives visited the Plaintiffs at their corporate offices in North Carolina on at least four occasions, made daily telephone calls to North Carolina, sent proposed contracts to North Carolina for consideration, billed from Ohio to North Carolina, and received payments which were sent from North Carolina. CBG also has a contractual relationship with at least one other company in Charlotte. Diversified received $900,000 from the Plaintiffs by wire transmittal. Documents received by the Plaintiffs referred to CBG and Diversified interchangeably. SLMA claims the real party in interest is the SLMA Plan and admits personal jurisdiction over the Plan is appropriate. Nonetheless, SLMA representatives also sent correspondence and made phone calls to the Plaintiffs' North Carolina offices. SLMA received payments for premiums mailed from North Carolina. Patton personally participated in telephone calls and correspondence. These contacts are sufficient. *ETR Corp., supra; Starco, Inc. v. AMG Bonding & Ins. Serv., Inc.*, 124 N.C.App. 332, 337, 477 S.E.2d 211, 215 (1996) (**Foreign defendant which solicited plaintiff's business in North Carolina although never physically appearing here subject to personal jurisdiction**).

& *Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The Court noted that preemption should be approached with a presumption that Congress does *not* intend to "supplant state law," especially "in cases involving fields of traditional state regulation, including common law tort liability." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1467 (4th Cir.1996) (citing *Travelers*, 514 U.S. at 654–55, 115 S.Ct. 1671). In cases decided by the Fourth Circuit since the *Travelers* opinion, this Circuit has applied a much narrower scope of preemption. *See, e.g., Coyne, supra; Custer v. Sweeney*, 89 F.3d 1156 (4th Cir.1996); *Le-Blanc v. Cahill*, 153 F.3d 134 (4th Cir. 1998).

Turning to the case at hand, Plaintiffs have alleged both ERISA claims and common law claims in the same complaint. The ERISA claims are brought by the corporations as the sponsors of the employee welfare benefit plans and, in the amended complaint, the plans are also named as Plaintiffs.[2] Amended Complaint, at 2. SLMA is alleged to be the sponsor of SLMA Plan, a multiple employer welfare arrangement subject to ERISA. *Id.*, at 3. CBG and Diversified are sued as fiduciaries of the plans. *Id.*, at 20. The relief sought in the ERISA claims is an accounting of the funds received and expended, a restoration to the plans of any commissions unlawfully taken and a payment into the plans of any losses sustained by the plans as a result of the Defendants' conduct. *Id.*, at 21, 22, 26, 27.

However, in addition to the ERISA claims, Plaintiffs, in their individual capacities, claim the Defendants, in their non-fiduciary capacities, breached the parties' contracts, defrauded them, and conspired to conceal the fraud. In these claims, Plaintiffs seek relief in the form of monetary damages to be paid to the corporations, not the plans. The issue then, is whether common law claims sounding in contract and tort brought by the corporations who established the plans are preempted when the employers sue the service providers for failing to timely process and pay claims, overcharging for premiums, refusing to pay valid claims, and failing to obtain reinsurance coverage.

In *Coyne, supra,* an employer sued the designers of group health insurance plans alleging claims under ERISA and state law negligence. In finding the negligence claim was not preempted by ERISA, the Fourth Circuit noted the "gravamen of the claim is that the defendants, in their capacities as insurance professionals, negligently failed to obtain a replacement insurance plan for Delany that provided the same coverage and benefits as the [prior] policy.... Delany's state law claim simply does not threaten Congress's goal of 'nationally uniform administration of employee benefit plans.'" *Coyne,* 98 F.3d at 1470 (quoting *Travelers,* 514 U.S. at 657, 115 S.Ct. 1671). Allowing the claim to go forward would not impact the employee benefit structure or its administration, would not regulate the terms of the plan or any benefits it would provide and does not create or affect reporting, funding or benefits calculation. *Id.,* at 1471.

> Quite simply, Delany's claim is not aimed at a plan administrator at all since the defendants are sued in their capacities as insurance professionals for actions taken in that capacity.... Moreover, the malpractice claim is not aimed at obtaining ERISA benefits. Rather, the claim seeks damages proximately caused by the insurance professionals' negligent failure to procure the promised replacement plan. If Delany prevails on its claim, the defendants will be liable in their individual capacities for their negligence as insurance profession-

---

**2.** CBG claims Plaintiffs lack standing to bring the ERISA claims. The Court finds under the facts as alleged in the complaint that the Plaintiffs as sponsors retained authority to amend the plan in order to remove the plan administrator and thus, has standing to bring ERISA claims. *Coyne,* 98 F.3d at 1465–66.

als.... Common law imposes the duty of care regardless of whether the malpractice involves an ERISA plan or a run-of-the-mill automobile insurance policy. Thus, the duty of care does not depend on ERISA in any way.

*Id.*

Defendants claim *Coyne* turned on the fact that the plans had not been established at the time of the malpractice. However, the Circuit noted it was "irrelevant that Delany ultimately hired the defendants to serve as Plan Administrator ... after they designed and sold the plan to Delany. The malpractice claim would still exist if Delany had hired someone other than the defendants to serve as Plan Administrator[ ]." *Id.,* at 1471–72. The malpractice occurred when the defendants failed to procure the replacement coverage, a fact separate and distinct from any administration of the ERISA plan ultimately put into place.

 This Court can find no reason to distinguish the tort claims asserted here from those in the *Coyne* case. The Plaintiffs' claims for fraud, constructive fraud and civil conspiracy are based on the Defendants' failure to procure reinsurance coverage. Reinsurance coverage does not provide insurance benefits for the plan participants but instead is in the nature of excess liability coverage for the employer and, as such, falls outside the scope of both the plan and ERISA. *See, e.g., Thompson v. Talquin Bldg. Products Co.,* 928 F.2d 649, 653 (4th Cir.1991) (**"Instead of covering employees directly, the stop-loss insurance covers the Plan itself."**); *Union Health Care, Inc. v. John Alden Life Ins. Co.,* 908 F.Supp. 429 (S.D.Miss.1995). In fact, ERISA provides no remedy for such a situation. *Geweke Ford v. St. Joseph's Omni Preferred Care Inc.,* 130 F.3d 1355, 1360 (9th Cir.1997). "ERISA does not preempt regulation of those relationships 'where a plan operates just like any other commercial entity-for instance the relationship between the plan and its own employees, or the plan and its insurers or

creditors.'" *Id.,* at 1358 (citations omitted). State law claims are preempted only when a plaintiff, "in order to prevail, must prove the existence of, or specific terms of, an ERISA plan." *McMahon v. Digital Equipment Corp.,* 162 F.3d 28, 38–39 (1st Cir.1998) (**finding a breach of contract claim against employer not preempted because recourse to the plan not necessary**). Thus, a claim by an employer against the third party administrator for failure to obtain reinsurance is not preempted "because the alleged harm involved not administrative claims processing, but only a failure to [obtain reinsurance] for the employer [ ]." *Geweke Ford,* 130 F.3d at 1360. The Fourth Circuit recently allowed a common law claim against a third party which allegedly fraudulently induced a plan to make a bad investment. "We hold that allowing the [ ] common law fraud claim to go forward against the [third party] does not undermine any of ERISA's objectives.... The fact that the Pension Fund is subject to ERISA is of no consequence to its common law fraud claim against the [defendants]." *LeBlanc,* 153 F.3d at 147–48. Likewise, the tort claims here do not impact the employee benefit structure or its administration, do not regulate the terms of the plan or any benefits it provides and do not create or affect reporting, funding or benefits calculation. *Coyne, supra.* Thus, the claims for fraud and misrepresentation, constructive fraud and civil conspiracy are not preempted.

 Plaintiffs' breach of contract claims are also asserted in their individual capacities. The fourth cause of action alleges that CBG failed to properly manage the Summit Plan, failed to timely process and pay claims, overcharged Summit for premiums and refused to pay claims. The fifth claim alleges that the Defendants improperly denied and delayed claims of Summit employees. The ninth and tenth claims make the same allegations against CBG in connection with SOI's plan but adds the additional claim that CBG failed

to procure reinsurance coverage. For the same reasons as stated above, the Court finds those portions of the contract claims based on failure to obtain reinsurance coverage and overcharging of premiums are not preempted by ERISA. However, common law "contract actions which are 'based on alleged improper processing of a claim for benefits under an employee benefit plan' are preempted by ERISA." *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1480 (4th Cir.1996) (citations omitted). These allegations cannot be resolved without reference to the plans themselves and thus, are preempted. *Id.*, at 1481. Moreover, the breach of contract claims involve the same allegations as the ERISA claims and recovery under those state law claims would impact the administration of the plan. *LeBlanc*, 153 F.3d at 147; Pizlo v. Bethlehem Steel Corp., 884 F.2d 116, 120 (4th Cir.1989) ("Preemption applies to a state cause of action under common law [ ], for the state breach of contract and estoppel claims pose the same potential as the statutory cause of action for *conflicting employer obligations and variable standards of recovery* . . . . '[T]he state law claims . . . *would determine whether any benefits are paid, and directly affect the administration of benefits under the plan.*'"). Thus, those claims alleging improper management of the plan, denial and delaying of claims, and untimely processing and payment of claims are preempted by ERISA.

Therefore, the only remaining claims are for an accounting and constructive trust. The relief sought in the claim for an accounting is redundant to the ERISA claims and will of necessity be granted if the Plaintiffs succeed on their ERISA claims. Amended Complaint at 21, 22, 26, 27. The claim for a constructive trust is so intertwined with plan interpretation that it may not proceed.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' request for a hearing on their motions is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the Defendants' motions to dismiss and renewed motions to dismiss for lack of personal jurisdiction are hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the Defendants' motions to dismiss for lack of standing are hereby **DENIED.**

**IT IS FURTHER ORDERED** that the Defendants' motions to dismiss and renewed motions to dismiss on the grounds of preemption are **ALLOWED** as to the claims for accounting and constructive trust and **ALLOWED IN PART** as to the claims for breach of contract as set forth herein; otherwise, the motions are **DENIED.**

The Clerk of Court is hereby instructed to schedule forthwith the initial pretrial conference before the undersigned.