Otto H. SCHRADER, Plaintiff,

v.

TRUCKING EMPLOYEES OF NORTH JERSEY WELFARE FUND, INC.—Pension Fund; The Board of Trustees of the Trucking Employees of North Jersey Welfare Fund, Inc.—Pension Fund; Teamsters Union Local 560; Penske Truck Leasing Company, LP; and Penske Logistics, a Division of Penske Truck Leasing Company, LP, Defendants.

No. 1:01CV0734.

United States District Court, M.D. North Carolina.

Aug. 1, 2002.

Fred T. Hamlet, Greensboro, NC, for Plaintiff.

Clinton R. Pinyan, Mack Sperling, Brooks Pierce McLendon Humphrey & Leonard, Greensboro, NC, David W. New, Herbert New & David W. New, P.C., Bloomfield, NJ, J. David James, Smith James Rowlett & Cohen, Greensboro, NC, Paul A. Montalbano, Brian E. Curtis, Schneider Goldberger Cohen Finn Solomon, Leder & Montalbano, P.C., Kenilworth, NJ, Charles Matthew Keen, Ogletree Deakins Nash Smoak & Stewart, P.C., Raleigh, NC, William H. Floyd, III, Ogle-

tree Deakins Nash Smoak & Stewart, P.C., Columbia, SC, for Defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

Currently before the Court is Plaintiff Otto H. Schrader's ("Plaintiff") Motion to Remand [Document # 9] in which he seeks to have this case remanded to the North Carolina Superior Court in Guilford County, North Carolina. For the reasons explained below, Plaintiff's Motion to Remand is DENIED. Also before the Court is Defendants Penske Truck Leasing Company, LP and Penske Logistics, a Division of Penske Truck Leasing Company, LP's (collectively "Penske") Motion to Dismiss [Document # 3] pursuant to which Penske seeks to have the claims asserted against it dismissed for failure to state a claim upon which relief may be granted. For the reasons stated below, Penske's Motion to Dismiss is also DENIED. Finally, before the Court is Defendant Teamsters Union Local 560's ("Local 560") Motion to Dismiss [Document # 5] which seeks to have the claims asserted against Local 560 dismissed for lack of personal jurisdiction, improper venue, insufficiency of process, and/or insufficiency of service of process. For the reasons stated below, Local 560's Motion to Dismiss is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The documents available to the Court indicate that in July, 1962, Plaintiff began working for Nu–Car Carriers, Inc. ("Nu–Car") of New Jersey. While employed in New Jersey, Plaintiff was a member of the Teamsters Union and worked under the jurisdiction of Local 560. In June, 1980, however, Plaintiff relocated to North Car-

olina, and began working for an unspecified employer under the jurisdiction of Teamsters Union Local 391 ("Local 391"). The substance of Plaintiff's Complaint [Document # 1], though, primarily involves his employment in New Jersey, and particularly, the administration of the benefit plan to which Plaintiff contributed while employed by Nu–Car in New Jersey. According to Plaintiff, Penske is the corporate successor to his former employer, Nu–Car, and is therefore responsible for the alleged actions thereof.

As a member of Local 560, Plaintiff participated in the Trucking Employees of North Jersey Welfare Fund, Inc.—Pension Fund (the "Pension Fund"), a Defendant in this action. Pursuant to its governing plan (the "Pension Plan"),[1] the Pension Fund is jointly administered by various employers and the Teamsters Union under § 302(c)(5) of the Labor Management Relations Act. Accordingly, Plaintiff asserts that Nu–Car appointed an agent to serve as its representative on the Board of Trustees of the Trucking Employees of North Jersey Welfare Fund, Inc.—Pension Fund (the "Pension Fund Trustees"), also a Defendant in this case.

As noted by Plaintiff, pursuant to a collective bargaining agreement Nu–Car was required to make contributions on Plaintiff's behalf to the Pension Fund. Consequently, on or about June 1, 1965, Local 560 authorized the deduction of $2.00 per week from Plaintiff's paycheck to fulfill this contribution requirement. According to Plaintiff, however, beginning in June, 1967, this payroll deduction was improperly diverted, at the direction and authorization of Local 560, to a different Teamsters fund. Plaintiff claims that Local 560 con-

---

1. The Pension Fund and the Pension Plan are obviously closely related. The Court uses the term "Pension Fund" to refer to the actual monetary fund in which employee pensions are held. The term "Pension Plan" refers to the provisions that govern the use and administration of the monies held in the Pension Fund.

tinued to direct and authorize this allegedly improper diversion for the duration of his employment under the jurisdiction of Local 560. Plaintiff also concludes that, due to this improper diversion of funds, as well as other allegedly suspect actions involving Local 560, "the Pension Fund had insufficient ... assets to fund projected future actuarial liabilities." (Compl., at 3.)

In 1984, approximately four years after Plaintiff left Nu–Car in New Jersey, the trustees of various Teamsters plans entered into a Reciprocal Agreement, the purpose of which was to provide full benefits for Teamsters members whose benefits payments were subject to multiple plans.[2] Thereafter, in 1985, Plaintiff claims that the Pension Fund Trustees amended the Pension Plan to incorporate the requirements of the Reciprocal Agreement. Plaintiff now claims that, as a participant in, and a beneficiary of the Pension Fund, he is entitled to receive full benefits per the terms of the Reciprocal Agreement.

According to Plaintiff, however, in December, 1991 the Pension Plan was further amended to "reduce the accrual of benefits for those members who had worked under the jurisdiction of Local 560 but who left the jurisdiction of Local 560 prior to January 1, 1992."[3] (Pl.'s Resp. Opp'n Penske's Mot. Dismiss, at 3.) This amendment also "reduced the amount of the pro-rata pension payable to a participant who last worked under a[r]elated [p]lan and who left covered employment under the ... Pension Plan prior to April 1, 1986." (Compl., at 4.) As previously noted, Plaintiff left the jurisdiction of Local 560 and moved to North Carolina in 1980, where he worked under the jurisdiction of Local 391 and participated in and contributed to the Central States Pension Fund ("Central States"). Plaintiff retired from the jurisdiction of Local 391 in North Carolina in January, 1999 and began receiving benefits from the Pension Fund as well as from Central States. Because he left the jurisdiction of Local 560 in 1980, and last worked under a "related plan" (that is, Central States) during his employment under the jurisdiction of Local 391, Plaintiff claims that his retirement benefits were adversely affected by the 1991 amendment.

Based on Plaintiff's assertion that he should receive full benefits under the terms of the Reciprocal Agreement, Plaintiff filed this action against the Pension Fund, the Pension Fund Trustees, Local 560, and Penske (collectively "Defendants") in the North Carolina Superior Court in Guilford County, North Carolina. Acting jointly, Defendants removed the case to this Court on July 27, 2001. Thereafter, on August 24, 2001, Plaintiff filed the instant Motion to Remand, seeking to have this case returned to state court. Prior to the filing of Plaintiff's Motion to Remand, Penske filed a Motion to Dismiss for failure to state a claim upon which relief may be granted. Local 560 also filed a Motion to Dismiss, although its Motion was based on claims of lack of personal jurisdiction, improper venue, insufficiency of process, and/or insufficiency of service of process. The Court will consider each of these Motions in turn. Because it relates to subject matter jurisdic-

---

**2.** Prior to the adoption of the Reciprocal Agreement, employees that worked under more than one plan were apparently not automatically eligible for full pension benefits. According to Penske, Nu–Car was not a participant in the Reciprocal Agreement. Plaintiff asserts, however, that Local 560 was a signatory to the Reciprocal Agreement.

**3.** Plaintiff suggests that the Pension Plan was amended because the Pension Fund was running-out of money. As stated previously, Plaintiff contends that the Pension Fund was in financial trouble because contributions were improperly diverted away from the Pension Fund.

tion and is therefore potentially dispositive of this matter in its entirety, the Court will first address Plaintiff's Motion to Remand.

## II. DISCUSSION

### A. Plaintiff's Motion to Remand

█ A defendant may remove any civil action brought in state court over which "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a); *Davis v. North Carolina Dept. of Corr.*, 48 F.3d 134, 138 (4th Cir.1995). Where federal jurisdiction is not based on diversity, a claim is within the subject matter jurisdiction of the federal courts only if it arises under the Constitution or laws of the United States, as stated in the plaintiff's well-pleaded complaint. 28 U.S.C. § 1331; *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986). Therefore, if a claim included within the plaintiff's well-pleaded complaint is "founded on a claim or right arising under the Constitution, treaties[,] or laws of the United States," it is removable. 28 U.S.C. § 1441(b). Furthermore, if any of the claims asserted by the plaintiff "arise under" the laws of the United States, the federal courts also have supplemental jurisdiction over any other claims which are part of the "same case or controversy" as the federal claim. 28 U.S.C. § 1367(a).

█ As stated previously, Plaintiff has asserted the instant Motion to Remand. Nevertheless, the party or parties that removed the case to federal court—in this case Defendants—bear the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994). If it ever appears that this Court does not have original jurisdiction over this matter, the case must be remanded. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Moreover, due to inherent federalism concerns, the federal courts construe removal jurisdiction quite narrowly. *Mulcahey*, 29 F.3d at 151. That is to say that if the propriety of removal is doubtful, remand is appropriate. *Id.*

Defendants seek to establish federal jurisdiction by claiming that Plaintiff asserted a breach of fiduciary duty claim against Defendants pursuant to § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2).[4] Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), provides that the federal courts have exclusive jurisdiction over such actions for breach of fiduciary responsibility.[5] On the basis of this exclusive jurisdiction, and the application of supplemental jurisdiction under 28 U.S.C. § 1337, Defendants maintain that federal jurisdiction, and therefore removal, is proper. The Court notes that, on its face, Defendants' assertion of federal jurisdiction seems sufficient. Because Plaintiff has specifically challenged Defendants' basis for federal jurisdiction, though, further consideration of the matter is warranted.

---

4. Section 1132(a)(2) states that a civil action under ERISA may be brought "by a participant, beneficiary[,] or fiduciary for appropriate relief under section 1109...." 29 U.S.C. § 1132(a)(2). Section 1109 governs liability for breach of fiduciary duty. *See* 29 U.S.C. § 1109.

5. Specifically, § 1132(e)(1) provides that [e]xcept for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by ... a participant, beneficiary [or] fiduciary.... State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraph[ ](1)(B) ... of subsection (a) of this section.
29 U.S.C. § 1132(e)(1).

█ In response to Defendants' assertion of federal jurisdiction, Plaintiff raises three distinct arguments:

1) that there is a procedural defect in the removal process that makes remand proper;

2) that the right of removal upon which Defendants rely is defeated by the existence of concurrent jurisdiction; and

3) that state law issues predominate to such an extent that federal jurisdiction is improper.

(Pl.'s Br.Supp.Mot. Remand Guilford Superior Ct., at 2.) With respect to his first argument, Plaintiff notes that Defendants' Removal Petition identified his claim as one for breach of fiduciary duty under § 1132(a)(2). Plaintiff contends, however, that his claim is actually one for lost benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).[6] Plaintiff therefore concludes that this discrepancy is a procedural defect that warrants remand pursuant to 28 U.S.C. § 1447(c). *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 616 (4th Cir.2001) ("Section 1447(c) ... authorizes the grant of remand motions filed within [thirty] days after removal for any defect in the removal process other than subject matter jurisdiction and motions filed at any time for lack of subject matter jurisdiction.").[7] Plaintiff's argument as to this purported defect is not persuasive.

█ A careful review of Plaintiff's Complaint reveals that his Second Claim for Relief, although labeled as one for benefits under § 1132(a)(1)(B), actually alleges a claim for breach of fiduciary duty.[8] Specifically, Plaintiff's Complaint states that Defendants are either ERISA fiduciaries or *de facto* fiduciaries such that they are required to discharge their responsibilities as related to the Pension Fund for the exclusive benefit of the Pension Fund participants and beneficiaries. (Compl., at 7–

**6.** Section 1132(a)(1)(B) states that a civil action may be brought under ERISA by a participant or a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

**7.** Plaintiff's Motion to Remand satisfied the thirty-day period within which such motions must be filed.

**8.** The Court notes that Plaintiff's First Claim for Relief alleges a state law breach of contract claim based on the alleged violation of the Reciprocal Agreement. The Court further notes that when a state law claim is related to an ERISA plan, it is considered preempted by federal law. *See Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1479–80 (4th Cir.1996); *Biggers v. Wittek Indus., Inc.*, 4 F.3d 291, 298 (4th Cir.1993); 29 U.S.C. § 1144(a). Plaintiff's allegations suggest that the Reciprocal Agreement affects the calculation of benefits from the Pension Fund. If Plaintiff's assertion in this regard is true, then the Reciprocal Agreement would be related to an ERISA plan, that is, the Pension Plan. As such, the civil enforcement provision of ERISA (Section 502(a) of ERISA, 29 U.S.C. § 1132(a)) would appear to completely preempt Plaintiff's state law breach of contract claim, thereby converting it into a federal claim under 29 U.S.C. § 1132(a). *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002). Notably, the conduct that Plaintiff alleges amounts to a breach of the Reciprocal Agreement is best described as a breach of fiduciary duty. More specifically, Plaintiff alleges that the Pension Fund Trustees breached their fiduciary duties when they amended the Pension Plan in 1991 in violation of the Reciprocal Agreement. Therefore, to the extent that Plaintiff's state law breach of contract claim may be converted to a federal claim under § 1132(a), it would appear to be best characterized as a claim for breach of fiduciary duty under § 1132(a)(2). In any event, the parties have not raised this concern in their briefs. Accordingly, no further discussion of whether Plaintiff's state law breach of contract claim should be converted into an ERISA breach of fiduciary duty claim is warranted at this time.

8.) Plaintiff's Complaint further alleges that Defendants have failed to properly perform their fiduciary responsibilities in the following five ways:

1) wrongfully interpreting the Reciprocal Agreement which amends the Pension Plan to require less contributions to the Pension Plan from Nu–Car and its successors;

2) failing to follow the terms of the Pension Plan, as originally amended to adhere to the provisions of the Reciprocal Agreement;

3) treating similarly situated participants and beneficiaries differently when such treatment was not reasonably related to the purposes of the Pension Plan;

4) acting unreasonably in granting greater pension benefits to current members of Local 560 as compared to past members; and

5) abusing their discretion in reducing the pension benefits received by Plaintiff.

(*See Id.*) To the extent that Plaintiff's Complaint seeks to recover alleged losses on the basis of the above-listed actions, this Court finds that Plaintiff's Second Claim for Relief alleges a claim for breach of fiduciary duty, and not for lost benefits. It therefore follows that Defendants' characterization in their Removal Petition of Plaintiff's claim as one for breach of fiduciary duty was not an error that would warrant remand. Accordingly, Plaintiff's attempt to procure a remand on this basis is not persuasive.

With respect to his second argument regarding remand, Plaintiff asserts that the right to removal is precluded by the existence of concurrent jurisdiction. Clearly, this position requires that concurrent jurisdiction actually be in effect. Because concurrent jurisdiction exists between the state and federal courts for claims for lost benefits brought under § 1132(a)(1)(B), and exclusive jurisdiction lies with the federal courts for claims brought for breach of fiduciary duty under § 1132(a)(2), Plaintiff's argument in this regard is fully dependent on the Court's acceptance of his claim as one for lost benefits and not one based upon a breach of fiduciary duty. *See* 29 U.S.C. § 1132(e)(1). As noted earlier, however, Plaintiff's claim is properly characterized as one for breach of fiduciary duty, and not lost benefits. Again, such claims are not subject to concurrent jurisdiction. They are, according to § 1132(e)(1), within the exclusive jurisdiction of the federal courts. Therefore, due to the Court's prior ruling regarding Plaintiff's claim for breach of fiduciary duty, there is no concurrent jurisdiction to support Plaintiff's second argument in favor of remand.[9]

9. The Court notes that even if it were to accept Plaintiff's argument that there is concurrent jurisdiction in this matter, it appears that the case would still be removable. *Callison v. Charleston Area Med. Ctr., Inc.*, 909 F.Supp. 391, 394 (S.D.W.Va.1995) (stating that "[t]he existence of concurrent jurisdiction [in a case brought under § 1132(a)(1)(B) ] does not require remand" and that "where federal and state courts have concurrent jurisdiction, Congress must expressly provide for nonremovability to prevent removal"); *see McWilliams v. Metro. Life Ins. Co.*, 172 F.3d 863, 1999 WL 64275, at *1–2 n. 1 (4th Cir.1999) (noting that the existence of concurrent jurisdiction does not preclude removal in cases brought under § 1132(a)(1)(B)) (unpublished opinion); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987) (noting that "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) [of ERISA] removable to federal court"); *Whitfield v. Fed. Crop. Ins. Corp.*, 557 F.2d 413, 414 (4th Cir.1977) (per curiam) (holding that the existence of concurrent jurisdiction did not preclude removal in the context of the Federal Crop Insurance Act). Given the nature and extent of the referenced authority within the Fourth Circuit, Plaintiff's reliance on two district court cases from California for the proposition that

Plaintiff's third argument regarding remand is that state law issues predominate to such an extent that litigation in a federal forum is inappropriate. The Court notes, however, that Plaintiff provides little, if any, support for this argument, essentially mentioning it in passing.· Moreover, based on a careful reading of the Complaint, the basis of the controversy herein alleged is a breach of fiduciary duty under ERISA. Although Plaintiff tries to characterize this controversy as a state law breach of contract dispute, all of the conduct referenced by Plaintiff falls within the scope of an ERISA breach of fiduciary duty claim, over which the federal courts hold exclusive jurisdiction. Therefore, the Court finds Plaintiff's brief argument regarding the alleged predominance of state law issues to be unconvincing.

█ In sum, this Court finds that Defendants' reliance on exclusive federal jurisdiction as the basis for its removal petition was proper. Moreover, this Court is not persuaded by any of the three purported bases for remand asserted by Plaintiff. It necessarily follows, then, that Defendants have carried their burden to establish the propriety of federal jurisdiction. Accordingly, for the reasons explained above, Plaintiff's Motion to Remand [Document # 9] is hereby DENIED.

### B. Penske's Motion to Dismiss

As previously noted, Penske has asserted a Motion to Dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. With respect to such motions, dismissals are allowed only in very limited circumstances. *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). A court should not dismiss a complaint, or any particular allegation contained therein, "unless it appears certain that the plaintiff can prove no set of facts which would support [his] claim and would entitle [him] to relief." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied,* 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994), *cert. denied,* 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995).

█ With respect to its Motion to Dismiss, Penske argues that all of Plaintiff's claims against it should be dismissed. Penske bases its Motion on the assertion that it is not a fiduciary and did not exercise any authority or control over the Pension Plan regarding management, assets, or administration.[10] Penske states that, at

---

concurrent jurisdiction precludes removal is not persuasive.

**10.** Penske also alleges that Plaintiff's claims are time-barred because they arose over 20 years ago when Plaintiff left the jurisdiction of Local 560. In making its argument regarding a statute of limitations, though, Penske seeks to have this Court apply the relevant limitations period from either New Jersey or North Carolina. (Mem.Supp. Penske's Mot. Dismiss, at 9–10.) To the extent that the Court has determined that this action is properly described as a claim for breach of fiduciary duty, the Court notes that Congress has codified, as part of ERISA, a statute of limitations for breach of fiduciary duty claims. *See* 29

U.S.C. § 1113. Specifically, § 1113 provides as follows:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

most, its alleged corporate predecessor, Nu–Car, was involved in the selection of one of the Pension Fund Trustees that governed the Pension Fund. According to Penske, this single action is not enough to warrant labeling it with fiduciary status as alleged by Plaintiff.

The Court notes that under Fourth Circuit law, when an entity is involved solely in the selection of ERISA trustees, it is still considered an ERISA fiduciary, but only with respect to aspects of trustee selection. *Licensed Div. Dist. No. 1 MEBA/NMU, AFL—CIO v. Defries,* 943 F.2d 474, 477–78 (4th Cir.1991), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992); *see Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.,* 793 F.2d 1456, 1459–60 (5th Cir.1986), *cert. denied,* 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987). Therefore, in order to be liable for breach of fiduciary duty, an entity that only selects trustees must engage in a breach that relates to the selection of trustees. *See Riley v. Murdock,* 890 F.Supp. 444, 454 (E.D.N.C.1995), *aff'd,* 83 F.3d 415, 1996 WL 209613 (4th Cir.), *cert. denied,* 519 U.S. 964, 117 S.Ct. 387, 136 L.Ed.2d 304 (1996). Along those lines, it does not appear that the allegations contained in Plaintiff's Complaint relate to aspects of the selection of trustees. Rather, Plaintiff essentially complains that the 1991 Pension Plan amendment, an action that took place after the Pension Fund Trustees were selected, violates his rights as a participant in and a contributor to the Pension Fund. Plaintiff further complains that this amendment was adopted to compensate for a depletion of the Pension Fund that resulted from a history of improper diversion of contributions. With these allegations in mind, the Court notes that when the conduct alleged in a breach of fiduciary duty claim does not relate to the defendant's responsibilities as a fiduciary, the claim is subject to dismissal for failure to state a claim upon which relief may be granted. *Darcangelo v. Verizon Communications, Inc.,* 292 F.3d 181, 195 (4th Cir.2002) ("Because the alleged wrongdoing is not based on [the defendant's] conduct as a fiduciary, [the plaintiff's] § 502 breach of fiduciary duty claim fails to state a claim upon which relief can be granted."). Based on Fourth Circuit law, then, if Nu–Car was only involved in trustee selection, and Plaintiff's Complaint contained no allegations that a breach of fiduciary duty occurred in the selection of the Pension Fund Trustees, then dismissal for failure to state a claim would appear to be proper.

Contrary to Penske's position, however, Plaintiff's Complaint does not allege that Nu–Car was only linked to the Pension Fund through its selection of one trustee. Construing the Complaint in the light most favorable to Plaintiff, it also states that Nu–Car was involved (if not actively, at least through ratification and acquiescence) in the improper diversion of Plaintiff's payroll-deducted contributions to the Pension Fund. (Compl., at 2 & 7.) In response to this allegation, Penske maintains that its corporate predecessor, Nu–Car, was simply performing a ministerial function pursuant to a collective bargaining

except that in the case of fraud or conceal-ment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Based on the Court's ruling regarding the determination that this action is one for breach of fiduciary duty, the parties have not addressed the relevant statute of limitations question. Therefore, no further discussion of the issue is warranted at this time. After focusing on the effect of § 1113, should the parties determine that additional consideration is warranted regarding the appropriate statute of limitations, the Court will entertain a subsequent motion on that basis.

agreement that required it to send payroll deductions wherever Local 560 directed. At this early stage of the litigation, though, this Court does not have the benefit of reviewing the collective bargaining agreement, or any other document for that matter. Therefore, as required under the appropriate standard for reviewing motions to dismiss, this Court must accept Plaintiff's allegations as true.

As a result of Plaintiff's claim that Penske's predecessor, Nu–Car, was somehow involved in the diversion of his contributions to the Pension Fund, the Court finds that Penske's argument regarding Plaintiff's claims for breach of fiduciary duty is unpersuasive. Of course, with the benefit of discovery, it may yet be determined that Plaintiff has no recourse against Penske. On the face of the Complaint, however, at such an early stage of the litigation this Court cannot say that Plaintiff has failed to state a claim upon which relief may be granted. Accordingly, Penske's Motion to Dismiss [Document # 3] is hereby DENIED.

### C. Local 560's Motion to Dismiss

As previously stated, Local 560 has filed a Motion to Dismiss for lack of personal jurisdiction, improper venue, insufficiency of process, and/or insufficiency of service of process pursuant to Rules 12(b)(2), (3), (4), and (5) of the Federal Rules of Civil Procedure. In its Memorandum in Support of Motion to Dismiss, Local 560 stated that its claims regarding insufficiency of process and insufficiency of service of process were tied to the personal jurisdiction issue. (Mem. Supp. Mot. Dismiss, at 3, n. 1.) Local 560 elaborated on this point by stating that process and service of process were insufficient only to the extent that there was no personal jurisdiction over Local 560. Therefore, even though Local

560's Motion to Dismiss references Rules 12(b)(4) and (5), personal jurisdiction is the central issue for the Court's consideration. In the event that this Court retains personal jurisdiction over Local 560, Local 560 has also requested, as a part of its Motion to Dismiss, a change of venue to the District of New Jersey under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a). The Court will first consider the issue of personal jurisdiction.

 With respect to a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to make a prima facie showing of a "sufficient jurisdictional basis in order to survive the jurisdictional challenge." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir.1997) (internal quotation ommitted). In considering the strength of the plaintiff's prima facie jurisdictional showing, the pleadings and the inferences drawn therefrom are to be construed in favor of the plaintiff. *Id.* It is within this context that the Court must evaluate the jurisdictional question to determine whether personal jurisdiction over Local 560 is proper.

 As the primary support for its Motion to Dismiss, Local 560 maintains that personal jurisdiction cannot exist because it has virtually no contacts with the State of North Carolina.[11] In other words, Local 560 argues that according to the minimum contacts standard outlined in *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), this Court is without personal jurisdiction. Notably, the *Int'l Shoe* minimum contacts test is grounded in due process principles drawn from the Fourteenth Amendment.

In support of his prima facie showing of a sufficient jurisdictional basis, Plaintiff notes that ERISA provides for nationwide

---

**11.** Specifically, Local 560 claims that it carries out no activities in North Carolina, represents no employees in North Carolina, and has no members who live in North Carolina.

service of process. According to Plaintiff, when Congress has provided for nationwide service of process, personal jurisdiction is satisfied as long as the defendant has sufficient minimum contacts with the United States, irrespective of its contacts with the forum state.[12] Because this test is relatively easy to satisfy, Plaintiff's position suggests that due process is not a concern when dealing with nationwide service of process. In response to Plaintiff's due process argument, Local 560 maintains that even under the context of nationwide service of process, the minimum contacts test of *Int'l Shoe* must be satisfied to ensure that due process is not violated. Each of the parties' positions on the state of the law as it relates to ERISA and nationwide service of process is somewhat misplaced.

 ERISA provides that where an action is brought in federal court, "it may be brought in the district where the plan is administered, where the breach took place[,] or where a defendant resides or may be found, and process may be served in any other district court where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). This provision, which provides for nationwide service of process, "has been interpreted for purposes of personal jurisdiction as a 'national contacts test.'" *Strategic Outsourcing, Inc. v. Commerce Benefits Group Agency, Inc.*, 54 F.Supp.2d 566, 570 (W.D.N.C.1999). Therefore, when a federal court asserts personal jurisdiction over a defendant in a suit based on a statute that includes a provision for nationwide service of process, the relevant inquiry is not whether the defendant has sufficient minimum contacts with the forum state, but rather, whether the defendant has sufficient contacts with the United States as a whole. *Id.; see Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 567 (6th Cir.2001); *Bd. of Trustees, Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035 (7th Cir.2000); *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 825 (5th Cir.1996); *Fulk v. Bagley*, 88 F.R.D. 153, 167 (M.D.N.C.1980).[13] In that regard, then, Plaintiff's assertion as to the use of a national contacts test is correct.

 The inquiry does not end, as Plaintiff would apparently have it, with the application of the minimum contacts with the United States analysis, though. The reach of federal jurisdiction over Local 560 must also comport with the mandates of due process. The due process consideration is not, however, based on the Fourteenth Amendment *Int'l Shoe* test, as suggested by Local 560. *See Fulk*, 88 F.R.D.

**12.** Clearly, when dealing with a domestic entity, like Local 560, the minimum contacts with the United States test will be satisfied in virtually every situation.

**13.** Notably, the Fourth Circuit has yet to rule on the question of whether a national contacts test is appropriate in the context of ERISA. The Fourth Circuit has, however, plainly stated that the national contacts test was proper in the context of the Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as the Bankruptcy Act, both of which contain provisions for nationwide service of process. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir.1997), *cert. denied*, 523 U.S. 1048, 118 S.Ct. 1364,

140 L.Ed.2d 513 (1998) (stating in the context of RICO that where Congress has "authorized nationwide service of process ... so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant" (internal quotation omitted)); *Hogue v. Milodon Engineering, Inc.*, 736 F.2d 989 (4th Cir.1984) (same, but in the context of the Bankruptcy Act). Given the strong precedent from other Circuits as well as from district courts from within the Fourth Circuit (including this Court), the Court finds that the application of a national contacts test in the context of ERISA is appropriate.

at 167. Rather, because this case involves a nationwide service of process provision, the due process principles are drawn from the Fifth Amendment. *See, e.g., ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 626–27 (4th Cir.1997), *cert. denied,* 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998). Because the federalism concerns inherent in a Fourteenth Amendment due process analysis are not present when dealing with nationwide service of process pursuant to a federal law, Fifth Amendment due process principles primarily "protect[ ] the liberty interests of [defendants] against unfair burden and inconvenience."[14] *Id.,* at 626; *Hogue v. Milodon Engineering, Inc.,* 736 F.2d 989, 991 (4th Cir.1984). In the typical case, however, the Fifth Amendment offers little protection from onerous litigation, for when the defendant is located within the United States, "it is only in highly unusual cases that [any] inconvenience will rise to a level of constitutional concern." *ESAB Group,* 126 F.3d at 627 (quotation omitted); *Hogue,* 736 F.2d at 991 ("The propriety of process issuing from federal courts sitting in cases under federal law is not tested by the same yardstick as is the constitutional limitation upon service of process issuing from state courts because the issues involved are necessarily national in character."). In fact, the United States District Court for the Western District of North Carolina recently stated that, with respect to due process, the " 'ERISA statute satisfies [the Fifth Amendment] because parties who engage in any of the covered activities are put on fair notice that they might be called to answer for their actions in any federal court in the United States.' " *Strategic Outsourcing,* 54 F.Supp.2d at 570 (brackets in original) (quoting *Green v. William Mason & Co.,* 996 F.Supp. 394, 397 (D.N.J.1998)).

With respect to Local 560, there is no doubt that it satisfies the national contacts test. Local 560 is an unincorporated labor organization with its principal place of business in New Jersey. It has labor jurisdiction in both New Jersey and New York and also conducts significant business in New Jersey. Therefore, it is clear that Local 560 has sufficient contacts with the United States. Likewise, with respect to Fifth Amendment due process, this Court finds that there is not anything in the record to indicate such extreme inconvenience or unfairness to Local 560 so as to outweigh Congress' intent to provide personal jurisdiction through the nationwide service of process provision.[15] Accordingly, this Court finds that personal jurisdiction over Local 560 is proper.

 As previously noted, Local 560, as a part of its Motion to Dismiss, also claims that venue is not proper in the Middle

---

14. The due process element of the Fifth Amendment also limits the extraterritorial scope of federal power. Because Local 560 is a domestic entity, however, this limit is not a factor in the instant case.

15. For example, in *ESAB Group,* a New Hampshire corporation was sued in South Carolina by a South Carolina plaintiff. The Fourth Circuit, in considering the due process question, determined that the inconvenience to the defendant of having to travel to South Carolina to defend the suit was not sufficient to violate due process. *ESAB Group,* 126 F.3d at 627. Similarly, in *Strategic Outsourc-*

*ing,* the United States District Court for the Western District of North Carolina determined that requiring Ohio defendants to travel to North Carolina to defend a lawsuit did not implicate the due process clause. *Strategic Outsourcing,* 54 F.Supp.2d at 570. Of course, the defendants in *Strategic Outsourcing* had some contact with the forum state; the Western District, however, made its determination without regard to those contacts. Moreover, this Court finds that Local 560 has not been inconvenienced to the extent that Fifth Amendment due process is implicated irrespective of its claim that it has no contacts with North Carolina.

District of North Carolina. Rather, Local 560 asks that this Court, in the event it retains personal jurisdiction, transfer the case to the District of New Jersey. According to § 1132(e)(2) of ERISA, venue is proper in any district where the plan is administered, where the alleged breach took place, or where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2). The Court notes that with respect to cases brought pursuant to ERISA, the alleged breach is considered to have occurred in the district where the beneficiary receives his benefits. *See, e.g., Derise v. Life Ins. Co. of N. Am.,* No. Civ.A 98–0797, 1998 WL 231037, at *1 (E.D.La. May 7, 1998); *Keating v. Whitmore Mfg. Co.,* 981 F.Supp. 890, 892–93 (E.D.Pa.1997); *Helder v. Hitachi Power Tools, USA Ltd.,* 764 F.Supp. 93, 95 (E.D.Mich.1991); *Wallace v. Am. Petrofina, Inc.,* 659 F.Supp. 829, 832 (E.D.Tex.1987). Therefore, because Plaintiff resides in, and consequently receives his benefits in the Middle District of North Carolina, venue may be maintained in this Court.[16]

▮▮▮▮ Nevertheless, Local 560 claims that on the basis of 28 U.S.C. § 1404(a), venue should be transferred to the District of New Jersey for the convenience of the parties and witnesses involved. In support of this claim, Local 560 asserts that because Plaintiff worked in New Jersey, and the Pension Plan and Local 560 conduct their business in New Jersey, it would be more appropriate to transfer venue to the District of New Jersey. With respect to a change of venue on the basis of convenience, the Court must balance the factors involved and " 'unless the balance

is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' " *Collins v. Straight, Inc.,* 748 F.2d 916, 921 (4th Cir.1984) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)); *see Regent Lighting Corp. v. Galaxy Elec. Mfg., Inc.,* 933 F.Supp. 507, 513 (M.D.N.C. 1996). The factors to be considered in deciding the venue question are the plaintiff's initial choice of venue, residence of the parties, ease of proof, availability of compulsory process, cost of attaining attendance of willing witnesses, expeditious and inexpensive trial, and the interest of localized litigation. *Regent Lighting,* 933 F.Supp. at 513. However, venue should not be transferred to another district if doing so would simply shift the inconvenience from one party to another. *Id.*

In the instant case, it appears that a transfer of venue to the District of New Jersey would only shift the inconvenience from Local 560 to Plaintiff. Of course, Local 560 argues that because Plaintiff worked in New Jersey, the balance tips in favor of a trial in New Jersey, for the convenience of both the parties and the witnesses. The Court notes that Plaintiff now resides in, and receives his benefits in North Carolina. For that reason, Plaintiff would suffer a similar inconvenience if he were forced to travel to New Jersey for trial. The Court also notes the recognized congressional intent regarding ERISA to provide plaintiffs with ready access to the federal courts. *See, e.g., Ballinger v. Perkins,* 515 F.Supp. 673, 675 (W.D.Va.1981) (referencing the congressional intent of

---

**16.** Plaintiff also maintains that venue is proper in this Court because Local 560 may be "found" in the district. Plaintiff's argument in this regard rests on his claim that a defendant is, for venue purposes, "found" in any district where personal jurisdiction is properly exercised over the defendant. In each of the cases sited by the Plaintiff, though, venue

was assessed by applying the *Int'l Shoe* minimum contacts analysis for personal jurisdiction. Because venue is proper in this District based on where the alleged breach took place, this Court does not need to address whether Local 560 can be found in the District on the basis of the *Int'l Shoe* personal jurisdiction test.

ERISA and consequently giving the venue provisions of ERISA a broad interpretation); 29 U.S.C. § 1001(b) (stating that the policy of ERISA is to protect the interests of participants in employee benefits plans by, among other things, "providing for ready access to the [f]ederal courts"). In light of the fact that a change of venue would apparently do nothing more than shift the inconvenience from one party to another, as well as the policy of interpreting ERISA broadly so as to facilitate open access to the federal courts, this Court finds that Local 560 has failed to carry its burden to demonstrate why Plaintiff's choice of forum should be disregarded. Accordingly, venue will remain in the Middle District of North Carolina.

In sum, the Court notes that Plaintiff has carried his burden to establish a sufficient jurisdictional basis based on the application of nationwide service of process. In light of Plaintiff's showing, Local 560 has failed to demonstrate that personal jurisdiction is improper. Likewise, because its claims regarding insufficiency of process and insufficiency of service of process were tied to the personal jurisdiction issue, Local 560's Motion to Dismiss also fails on those grounds. Finally, as just indicated, Local 560 has failed to demonstrate sufficient inconvenience to justify a change of venue to the District of New Jersey. Therefore, for the reasons discussed above, Local 560's Motion to Dismiss [Document # 5] on the grounds of either lack of personal jurisdiction, improper venue, insufficiency of process and/or insufficiency of service of process is hereby DENIED.

## III. CONCLUSION

For the forgoing reasons, Plaintiff's Motion to Remand [Document # 9], which seeks to have this case remanded to the North Carolina Superior Court in Guilford County, North Carolina is hereby DENIED. Also for the reasons discussed above, Penske's Motion to Dismiss [Document # 3] for failure to state a claim upon which relief may be granted is hereby DENIED. Finally, for the reasons stated herein, Local 560's Motion to Dismiss for lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process is hereby DENIED.

An Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.